## ANGEL RAMOS ET AL. *v.* TOWN OF VERNON ET AL. (SC 16152)

McDonald, C. J., and Borden, Norcott, Katz, Palmer, Sullivan and Vertefeuille, Js.

*(Two justices concurring in part in one opinion)*

Argued May 31—officially released November 21, 2000

*Ann M. Parrent*, with whom was *Jon L. Schoenhorn*, for the appellants (plaintiffs).

*Wesley W. Horton*, with whom were *Susan M. Cormier*, *Jerome D. Levine* and *Martin B. Burke*, assistant town attorney, for the appellees (defendants).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Opinion*

KATZ, J. This case, which comes to us upon our acceptance of six certified questions from the United States District Court for the District of Connecticut pursuant to Public Acts 1999, No. 99-107, § 4,[1] asks us to consider the *facial*[2] validity, under the Connecticut constitution, of the nighttime juvenile curfew ordinance (ordinance) of the named defendant, the town of Vernon (town). Vernon Code of Ordinances § 8-4 (Curfew Ordinance). Specifically, the certified questions require us to determine whether the town's ordinance: (1) violates minors' rights of free speech and assembly as

[1] Number 99-107 of the 1999 Public Acts, entitled "Uniform Certification of Questions of Law Act," provides in relevant part: "Sec. 4. The Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." See also Practice Book § 82-1.

Public Act 99-107, § 14, repealed our state's previous certification procedure, which was codified at General Statutes § 51-199a.

[2] We emphasize that the plaintiffs have brought only a "facial," and not an "as applied," challenge to the ordinance.

secured by article first, §§ 4,[3] 5[4] and 14,[5] of the Connecticut constitution; (2) violates minors' rights of freedom from unreasonable searches and seizures as secured by article first, § 7,[6] of the Connecticut constitution; (3) violates minors' rights of personal liberty as secured by article first, § 9,[7] of the Connecticut constitution; (4) violates minors' rights of equal protection as secured by article first, §§ 1[8] and 20,[9] of the Connecticut constitution; (5) violates parents' rights of due process as secured by article first, § 10,[10] of the Connecticut constitution; or (6) is unconstitutionally vague in violation of

[3] Article first, § 4, of the constitution of Connecticut provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

[4] Article first, § 5, of the constitution of Connecticut provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."

[5] Article first, § 14, of the constitution of Connecticut provides: "The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance."

[6] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[7] Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[8] Article first, § 1, of the constitution of Connecticut provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

[9] Article first, § 20, of the constitution of Connecticut provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

[10] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

article first, § 8,[11] of the Connecticut constitution. We conclude that the plaintiffs have failed to sustain "the heavy burden of proving [the ordinance's] unconstitutionality beyond a reasonable doubt." *State* v. *Floyd*, 217 Conn. 73, 79, 584 A.2d 1157 (1991). Therefore, we conclude that the town's ordinance is not facially unconstitutional under any of these provisions of the constitution of Connecticut. Accordingly, we answer certified questions one through six in the negative.

The following facts and procedural history, as provided by the District Court in its certification request pursuant to Practice Book § 82-3,[12] are relevant to our disposition of the certified questions. "The plaintiff, Richard Ramos, is a fourteen year old[13] resident of [the town]. . . . The other plaintiff, Janet Ramos, is a resident of [the town] and the mother of Richard Ramos. . . .[14] [The town] is a Connecticut municipality organized under the laws of the State of Connecticut that [has adopted] and enforces [the ordinance] as a matter of official policy. . . . [The defendant] Rudolf Rossmy

[11] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

[13] Practice Book § 82-3 provides in relevant part: "A certification request shall set forth: (1) The questions of law to be answered; and (2) a finding or stipulation approved by the court setting forth all facts relevant to answering the questions certified and showing fully the nature of the controversy in which the questions arose. . . ."

[14] The District Court's certification request was ordered on June 23, 1999. Thus, we conclude that Richard Ramos was fourteen years old as of that date. At oral argument, the parties were unable conclusively to establish Richard Ramos' current age. Therefore, for purposes of answering the certified questions, we assume that Richard Ramos is currently under sixteen years of age.

[14] The District Court dismissed as moot the claims of the named plaintiff, Angel Ramos, because he had attained the age of eighteen and the ordinance no longer applied to him. Hereinafter, we refer to the individual plaintiffs by their full names and joint references to Richard Ramos and Janet Ramos are to the "plaintiffs."

is the chief of police for [the town] and is responsible for the enforcement of the ordinance."[15]

"On August 2, 1994, [the town] enacted [the ordinance, entitled] 'An Ordinance Establishing a Curfew' . . . . The ordinance creates a general curfew for persons under eighteen that is in effect from 11:00 p.m. to 5:00 a.m. on weeknights and 12:01 a.m to 5:00 a.m. on weekends. . . . The [ordinance] states that it was enacted to: '1. protect minors from each other and from other persons on the streets during nocturnal hours; 2. promote parental responsibility for and supervision of minors; and 3. protect the general public from nocturnal mischief and crime committed by minors.' Curfew Ordinance § 8-4 (a) . . . .

"The [ordinance] establishes the following offenses: '1. Curfew for Minors. It shall be unlawful for any minor to remain, idle, wander, stroll or play in any public place or establishment in the Town during curfew hours unless accompanied by a parent, guardian, custodian or other adult person having custody or control of such minor or unless the minor is on an emergency errand or specific business or activity directed or permitted by his parent, guardian, or other adult person having the care and custody of the minor or where the presence of such minor is connected with or required by some legitimate employment, trade, profession or occupation, or unless the minor is exercising his/her [f]irst [a]mendment rights.[16]

" '2. Parents' Responsibility. It shall be unlawful for the parent, guardian or other adult person having custody or control of any minor under the age of sixteen

---

[15] References to the town and to Rossmy, jointly, are to the "defendants."

[16] In a footnote to the certification request, the District Court noted that "[a]fter the start of this action, the . . . town council amended the curfew ordinance in December, 1998, with an effective date of January 1, 1999, to add the language 'or unless the minor is exercising his/her [f]irst [a]mendment rights.' "

(16) to suffer or permit or by inefficient control to allow such person to be on the streets or sidewalks or on or in any public property or public place or establishment within the Town during the curfew hours. However, the provisions of this Section do not apply to a minor accompanied by his or her parent, guardian, custodian or other adult person having the care, custody or control of the minor, or if the minor is on an emergency errand or specific business or activity directed by the minor's parent, guardian, custodian or other adult having the care and custody of the minor or if the parent, guardian or other adult person herein has made a missing person notification to the Police Department.' Curfew Ordinance § 8-4 (c). . . .[17]

---

[17] The certification request provided: "The curfew ordinance provides the following definitions: '1. Curfew Hours: For minors under eighteen (18) years old: shall be between 11:00 p.m. on any Sunday, Monday, Tuesday, Wednesday, or Thursday until 5:00 a.m. of the following day; and 12:01 a.m. until 5:00 a.m. on any Saturday or Sunday.

" '2. Emergency: shall mean an unforeseen combination of circumstances or the resulting state that calls for immediate action. The term includes but is not limited to, a fire, a natural disaster, or automobile accident, or any situation requiring immediate action to prevent serious bodily injury or loss of life.

" '3. Establishment: shall mean any privately-owned place of business operating for a profit to which the public is invited, including, but not limited to any place of amusement or entertainment.

" '4. Guardian: shall mean a person who, under court order, is the guardian of the person of a minor; or a public or private agency with whom a minor has been placed by the court.

" '5. Minor: shall mean any person under eighteen (18) years of age.

" '6. Parent: shall mean a person who is a natural parent, adoptive parent, or step-parent of another person; or at least eighteen (18) years of age and authorized by a parent or guardian to have the care and custody of a minor.

" '7. Public Place: shall mean any street, alley, highway, sidewalk, park, playground or place to which the general public has access and a right to resort for business, entertainment, or other lawful purpose. A public place shall include but not be limited to any store, shop, restaurant, tavern, bowling alley, cafe, theater, drug store, pool room, shopping center and any other place devoted to amusement or entertainment of the general public. It shall also include the front or immediate area of the above.

" '8. Remain: shall mean to linger or stay, or fail to leave the premises when requested to do so by a police officer or the owner, operator, or other person in control of the premises.' Curfew Ordinance § 8-4 (b) (1)–(8)."

"[In addition to the exceptions listed within the ordinance provision establishing the 'Curfew for Minors'; Curfew Ordinance § 8-4 (c) (1); the ordinance] provides the following exception for special functions: 'Any minor attending a special function or event sponsored by any religious, school, club, or other organization that requires such minor to be out at a later hour than that called for in this section shall be exempt from the provisions of this ordinance provided such minor has the approval of his or her parent or guardian to attend said function or event. Such minors who attend said function or event shall be required to be in their homes or usual place of abode within one half hour after said function or event is ended.' Curfew Ordinance § 8-4 (d). . . .

"The [ordinance] authorizes police officers to issue citations to minors sixteen or seventeen years old. See Curfew Ordinance § 8-4 (e) (1). For minors under the age of sixteen, the ordinance requires police officers to issue a warning for the first infraction. See Curfew Ordinance § 8-4 (e) (2) (A). If a minor under sixteen fails to heed a warning or has been warned on a previous occasion, a police officer can take the minor to the Police Department and notify the parent, guardian or other adult person having the care and custody of the minor. See Curfew Ordinance § 8-4 (e) (2) (B).

"For minors sixteen and seventeen years of age who violate the curfew, the ordinance provides that they shall be fined no more than $50 for the first infraction, $75 for the second infraction, and $90 for all subsequent infractions. See Curfew Ordinance § 8-4 (f) (2). For minors under sixteen, the ordinance provides that the parent, guardian or other adult person having the care and custody of a minor, who has received notice under § 8-4 (e) (2), shall be fined no more than $50 for the first infraction, $75 for the second infraction, and $90 for all subsequent infractions. See Curfew Ordinance § 8-4 (f) (3) (A)." The ordinance also provides that "any

minor under the age of sixteen (16) violating the provisions of this ordinance may be referred to juvenile authorities and dealt with in accordance with the Juvenile Court law and procedure." Curfew Ordinance § 8-4 (f) (3) (C).

The District Court's certification request also provided: "[Richard Ramos] alleges that, with his mother's permission, he has engaged and continues to engage in social activities with his friends that continue past the start of curfew. . . . He claims that he has literally had to run home from such activities for fear of being caught out during curfew hours. . . . [Janet Ramos] alleges that the curfew ordinance usurps her parental authority and violates her right to set her own limits on her son's activities as she sees fit."

The plaintiffs brought an action under 42 U.S.C. § 1983 against the defendants in the District Court challenging the validity of the town's ordinance. The plaintiffs alleged that the ordinance violates their constitutional rights as guaranteed by the first, fourth and fourteenth amendments to the United States constitution, and their rights as guaranteed by various provisions of article first of the constitution of Connecticut.

Subsequently, the District Court issued a ruling that upheld the ordinance against the challenges predicated upon the federal constitution. See generally *Ramos ex rel. Ramos* v. *Vernon*, 48 F. Sup. 2d 176 (D. Conn. 1999). The District Court reserved judgment on the plaintiffs' state constitutional claims pending resolution of this certification request. Id., 188. Pursuant to Public Act No. 99-107, § 4; see footnote 1 of this opinion; we accepted the District Court's certification request to answer six certified questions.[18] We answer questions one through six in the negative.

_____

[18] The certified questions are: "1. Whether [the town's ordinance] violates minors' rights of free speech and assembly as secured by Article First, §§ 4, 5, and 14, of the Connecticut constitution?

"2. Whether [the town's ordinance] violates minors' rights of freedom

# I

## STANDING

Before considering the certified questions, we first address the issue of whether the plaintiffs have standing to raise claims challenging the facial validity of the ordinance. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. *Housing Authority* v. *Local 1161*, 1 Conn. App. 154, 157, 468 A.2d 1251, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). Further, the court has a duty to dismiss, even on its own initiative, any [portion of the] appeal that it lacks jurisdiction to hear. *Sasso* v. *Aleshin*, 197 Conn. 87, 89, 495 A.2d 1066 (1985). . . . *Tomlinson* v. *Board of Education*, 226 Conn. 704, 717–18, 629 A.2d 333 (1993); see *Daley* v. *Hartford*, 215 Conn. 14, 27–28, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 573, 112 L. Ed. 2d 525 (1990) (the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time)." (Internal quotation marks omitted.) *Weidenbacher* v. *Duclos*, 234 Conn. 51, 54 n.4, 661 A.2d 988 (1995).

"Standing is . . . a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and

from unreasonable searches and seizures as secured by Article First, § 7, of the Connecticut constitution?

"3. Whether [the town's ordinance] violates minors' rights of personal liberty as secured by Article First, § 9, of the Connecticut constitution?

"4. Whether [the town's ordinance] violates minors' rights of equal protection as secured by Article First, §§ 1 and 20, of the Connecticut constitution?

"5. Whether [the town's ordinance] violates parents' rights of due process as secured by Article First, § 10, of the Connecticut constitution?

"6. Whether [the town's ordinance] is unconstitutionally vague in violation of Article First, § 8, of the Connecticut constitution?"

vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury [that the complainant] has suffered *or is likely to suffer*, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Emphasis added; internal quotation marks omitted.) *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 178, 740 A.2d 813 (1999).

This court previously has concluded that "a genuine likelihood of criminal liability or civil incarceration is sufficient to confer standing." *Board of Pardons* v. *Freedom of Information Commission*, 210 Conn. 646, 650, 556 A.2d 1020 (1989). In that case, the court concluded that the board of pardons (board) had standing to challenge a freedom of information commission's order "requiring the board, in the future, to conduct its deliberations in public except under narrowly delimited circumstances." Id., 647–48. In determining that the board had standing, the court reasoned that, "[b]ecause the Freedom of Information Act makes noncompliance with [a freedom of information commission] order a class B misdemeanor . . . the individual members of the board have a specific and personal interest in the validity of such an order. In the future, board members face the risk of injury, in the form of criminal prosecution and sanctions, if they fail to comply with the present [freedom of information commission] order. Such a risk of prosecution establishes the requisite specific and personal interest of the members of the board and of the board itself as their representative." (Citation omitted; internal quotation marks omitted.) Id., 650. Furthermore, other courts have considered preenforcement challenges to juvenile curfews. See, e.g., *Waters* v. *Barry*, 711 F. Sup. 1125, 1128–31 (D.D.C. 1989) (holding

preenforcement challenge to juvenile curfew statute justiciable because plaintiffs provided descriptions of past activities that they hoped to continue and that would be prohibited by statute).

In this case, Richard Ramos alleges that he has engaged in, and continues to engage in, conduct that is "unlawful"; Curfew Ordinance § 8-4 (c) (1); under the ordinance. We recognize, without deciding, that although Richard Ramos arguably is not subject to "criminal" liability for violating the ordinance,[19] the ordinance provides that, as a minor under sixteen years of age, he may "be referred to juvenile authorities and dealt with in accordance with the Juvenile Court law and procedure"; Curfew Ordinance § 8-4 (f) (3) (C); for violating the ordinance. Because the conclusion in *Board of Pardons* that the board had standing to challenge the freedom of information commission's order did not rest upon *the level or type of sanction* that the board members potentially faced, we find the rationale of that case to be equally compelling in a case, such as this, in which the litigant's alleged activity is proscribed by the ordinance as "unlawful"; Curfew Ordinance § 8-4 (c) (1); and in which the litigant may be referred to Juvenile Court for violation of its terms. Therefore, we conclude that Richard Ramos has standing to challenge the ordinance with respect to certified questions one through four. Each of these questions is premised upon

---

[19] For minors under sixteen years of age, such as Richard Ramos, the minors' parents and certain other adults charged with the care of the child may, under certain circumstances, be held to have committed an infraction if the child violates the curfew. See Curfew Ordinance § 8-4 (f) (3). For minors sixteen years of age or older, violation of the curfew ordinance is an infraction; see Curfew Ordinance § 8-4 (f) (2); and therefore an "offense." See Practice Book § 44-37 (4) (" '[o]ffense' means any crime or violation which constitutes a breach of any law of this state or any local law or ordinance . . . including infractions"). Pursuant to the rules of practice, however, violation of the ordinance by minors sixteen years of age or older may not be a "crime." See Practice Book § 44-37 ("[u]nless the context clearly requires otherwise . . . (5) '[c]rime' means a felony or a misdemeanor").

claims that involve an alleged deprivation of his rights as a minor.

Janet Ramos has alleged that the curfew ordinance usurps her parental authority over her son. We conclude that she has raised "a colorable claim of direct injury [that she] has suffered or is likely to suffer . . . ." (Internal quotation marks omitted.) *Connecticut Associated Builders & Contractors* v. *Hartford*, supra, 251 Conn. 178. Therefore, she has standing to challenge the constitutionality of the ordinance with respect to question five, which involves an alleged violation of her rights as a parent. We conclude that both Richard Ramos and Janet Ramos have standing to raise the vagueness claim contained in question six, as such a claim implicates an alleged violation of their rights as a minor and parent, respectively.

II

CERTIFIED QUESTION NUMBER ONE:
FREE SPEECH AND ASSEMBLY
OVERBREADTH CLAIM

Certified question number one requires us to pass upon the facial validity of the ordinance against a challenge that it violates minors' rights of free speech and assembly as secured in article first, §§ 4, 5 and 14, of the Connecticut constitution. See footnote 18 of this opinion. We have not hesitated to consider facial challenges premised upon free speech claims. See, e.g., *State* v. *Linares*, 232 Conn. 345, 363–87, 655 A.2d 737 (1995); *State* v. *Williams*, 205 Conn. 456, 472–74, 534 A.2d 230 (1987); *State* v. *Proto*, 203 Conn. 682, 705–10, 526 A.2d 1297 (1987). We have done so "to vindicate two substantial interests: (1) eliminating the statute's 'chilling effect' on others who fear to engage in the expression that the statute unconstitutionally prohibits; and (2) acknowledging that every defendant has the right not to be prosecuted for expression under a consti-

tutionally overbroad statute." *State* v. *Linares*, supra, 364. We have considered such facial challenges premised upon free speech rights guaranteed under both the state; see id., 377–87; and the federal constitution. See id., 363–76.

Richard Ramos claims that, because we have construed the Connecticut constitution to bestow greater expressive rights upon the public than the federal constitution; id., 379–81; the ordinance's exception exempting from liability a minor "exercising his/her [f]irst [a]mendment rights"; Curfew Ordinance § 8-4 (c) (1); see footnote 16 of this opinion; is not sufficient to save it from facial invalidity as being overbroad in violation of article first, §§ 4, 5 and 14, of our state constitution. The defendants claim that the mere fact that the Connecticut constitution may, *in certain circumstances*, afford greater expressive rights than the federal constitution, does not establish that the absence of an express exception in the ordinance for expressive rights protected under the Connecticut constitution violates the state constitution. We agree with the defendants.

A

We begin our consideration of this claim with a discussion of the general principles of constitutional adjudication relevant to an overbreadth challenge. "The essence of an overbreadth challenge is that a statute [or ordinance] that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the [freedom of speech]. *Secretary of State* v. *J. H. Munson Co.*, 467 U.S. 947, 968, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984); *City Council* v. *Taxpayers for Vincent*, 466 U.S. 789, 798–801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); *Husti* v. *Zuckerman Property Enterprises, Ltd.*, 199 Conn. 575, 587, 508 A.2d 735, appeal dismissed,

479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 6 (1986)." *State* v. *Proto*, supra, 203 Conn. 707.

"[I]t is a necessary predicate to free speech analysis that the government's action has, in some way, implicated the free exercise of speech. *State* v. *Ball*, 226 Conn. 265, 270, 627 A.2d 892 (1993). In other words, if the statute regulates conduct only, i.e., conduct which has no arguable expressive component, then such regulation does not impermissibly curtail freedom of speech. . . . Free speech scrutiny, in order to protect expression adequately, must be triggered by a threshold finding that particular government regulation has the incidental effect of burdening expression. See [id.]. Thus, although consideration of particular expressive conduct's effect on the legislature is relevant to determine, under the rubric of free speech analysis, whether the government may constitutionally prohibit that conduct, such consideration of the effect cannot be used to preclude the constitutional inquiry from ever taking place." (Citation omitted.) *State* v. *Linares*, supra, 232 Conn. 364–65 n.15. "A single impermissible application of [an ordinance], however, will not be sufficient to invalidate the [ordinance] on its face; rather, to be invalid, [an ordinance] must reach a substantial amount of constitutionally protected conduct." (Internal quotation marks omitted.) Id., 364.[20] Finally, as with all consti-

[20] We also note that, although the doctrines of overbreadth and vagueness are "closely related"; *State* v. *Proto*, supra, 203 Conn. 706; they are distinct. See *State* v. *Indrisano*, 228 Conn. 795, 798 n.4, 640 A.2d 986 (1994) ("Although vagueness and overbreadth challenges are closely related, they are not identical. See, e.g., L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-32, p. 1033."). "A statute may be overbroad without being vague. For example, a statute making it a crime to use the words 'kill' and 'President' in the same sentence is not vague, but is clearly overbroad. By contrast, a vague statute may or may not be overbroad; the vice of vagueness is that someone contemplating a course of conduct, expressive or otherwise, may be unable to tell what is forbidden." R. Fallon, D. Meltzer & D. Shapiro, Hart and Wechsler's The Federal Courts and The Federal System (4th Ed. 1996) pp. 202–203. We discuss the plaintiffs' vagueness claim in part VII of this opinion.

tutional challenges, "[a] party attacking the constitutionality of a validly enacted [ordinance] bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt. *State* v. *Breton*, 212 Conn. 258, 269, 562 A.2d 1060 (1989); *Zapata* v. *Burns*, 207 Conn. 496, 507–508, 542 A.2d 700 (1988). We will indulge in every presumption in favor of the [ordinance's] constitutionality; *State* v. *Breton*, supra [269]; and, when called upon to interpret [an ordinance], we will search for an effective and constitutional construction that reasonably accords with the [town council's] underlying intent." (Internal quotation marks omitted.) *State* v. *Floyd*, supra, 217 Conn. 79. Specifically, we have "the power to construe [ordinances] narrowly to comport with the constitutional right of free speech." *State* v. *Williams*, supra, 205 Conn. 473; see id., 473–74 (construing narrowly statute proscribing interfering with peace officer to save it from overbreadth challenge).

B

Turning now to the merits of the overbreadth challenge, we begin by noting that Richard Ramos and the defendants correctly note that an analysis " 'separate and distinct' "; *State* v. *Linares*, supra, 232 Conn. 381; from federal constitutional analysis is appropriate when considering free speech claims under the state constitution. Richard Ramos, however, has stated that the defendants are mistaken in claiming that a plaintiff cannot prevail on a state constitutional challenge without providing such a separate and distinct argument. Richard Ramos states in his brief that "[the defendants'] position is inconsistent with this court's approach in *Linares*, where *the court* conducted a separate state constitutional analysis of the impact of the restriction itself to determine whether free speech rights were restricted . . . ." (Emphasis added.) This is a misreading of *Linares*. It is not *this court's* obligation to conduct a separate and distinct analysis, but, rather, *the chal-*

*lenging party's* burden to provide such an argument. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the [party] has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the [party's] claim . . . . *State* v. *Robinson*, 227 Conn. 711, 721–22, 631 A.2d 288 (1993); see also *State* v. *Williams*, 231 Conn. 235, 245 n.13, 645 A.2d 999 (1994); *State* v. *Joyner*, 225 Conn. 450, 458 n.4, 625 A.2d 791 (1993); *State* v. *Rosado*, 218 Conn. 239, 251 n.12, 588 A.2d 1066 (1991)." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 319 n.19, 732 A.2d 144 (1999). Although we conclude that Richard Ramos has not abandoned his free speech claim under the state constitution, he clearly has, for reasons hereinafter provided, failed to articulate an argument that bears "the heavy burden of proving [the ordinance's] unconstitutionality beyond a reasonable doubt." *State* v. *Floyd*, supra, 217 Conn. 79.

The ordinance establishes the following offense. "Curfew for Minors. It shall be unlawful for any minor to remain, idle, wander, stroll or play in any public place or establishment in the Town during curfew hours unless . . . *the minor is exercising his/her [f]irst [a]mendment rights.*" (Emphasis added.) Curfew Ordinance § 8-4 (c) (1). Thus, the ordinance clearly evinces an intent to free a minor who is exercising his first amendment rights during curfew hours from liability under the ordinance.

Richard Ramos correctly claims that in *State* v. *Linares*, supra, 232 Conn. 377–87, we concluded that the Connecticut constitution bestowed greater expressive rights on the public than the federal constitution. Therefore, he claims, that "by definition" the exception for "[f]irst [a]mendment rights"; Curfew Ordinance § 8-

4 (c) (1); does not include free speech rights protected by the Connecticut constitution. Although we recognize that the reference in the ordinance is, perhaps, unartful, we nevertheless disagree with the assertion that the exception in the ordinance does not apply to speech protected under the state constitution. Rather, we read the phrase as an abbreviation for a minor's constitutional rights to expression and assembly, protected under either the federal or state constitution. Although, generally, in discerning legislative intent, we engage in a lengthy analysis drawing upon several sources; see *Shawmut Mortgage Co.* v. *Wheat*, 245 Conn. 744, 748–49, 717 A.2d 664 (1998); such an exercise is unnecessary. In this instance, we need only to point to two factors that confirm that the exception in the ordinance includes free speech rights protected by the Connecticut constitution. First, we note that the text of Curfew Ordinance § 8-4 (c) (1) is not confined to "first amendment rights *under the United States constitution.*" (Emphasis added.) Second, and more important, is that Richard Ramos' suggestion—that by using the phrase "[f]irst [a]mendment rights," the town intended to exclude corresponding rights under the state constitution—runs afoul of the fundamental principle of statutory interpretation that dictates that we read legislation to avoid, rather than raise, constitutional challenges. Because other curfew ordinances have been struck down precisely because they did not contain an exception for constitutionally protected rights of expression and assembly; see *Nunez* v. *San Diego*, 114 F.3d 935, 949 (9th Cir. 1997); we presume that the town intended to avoid such a potential constitutional infirmity. To read the exception as not embracing state constitutional rights of free expression and assembly would be to thwart that goal.

Additionally, Richard Ramos has failed to make any argument as to why the *ordinance itself* violates the

free speech clauses of our state constitution.[21] In order to prevail on a claim under the state constitution, he would need to identify the specific additional expressive rights recognized under the state constitution, and describe how such rights are infringed upon by the ordinance.[22] *State* v. *Linares*, supra, 232 Conn. 345, itself makes this clear. The lack of such an analysis precludes any conclusion that speech or conduct protected by the state constitution is involved or that the ordinance has a sufficiently substantial impact on such protected speech or expressive conduct to render it unconstitutional beyond a reasonable doubt. Accordingly, we reject Richard Ramos' claim that the ordinance facially violates minors' rights of free speech and assembly as secured in article first, §§ 4, 5 and 14, of the Connecticut constitution.

## C

In addition to his claim that the absence of an exception in the ordinance for expressive rights *indepen-*

[21] We agree with Richard Ramos that there is some authority authorizing an appellate court to consider evidence, not found by a trial court, surrounding the potential application of an ordinance challenged as being facially overbroad. See *Houston* v. *Hill*, 482 U.S. 451, 458 n.6, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) ("in concluding that the ordinance was overbroad, the Court of Appeals did not err in reviewing evidence ignored by the District Court concerning the application of the ordinance, and in concluding that this evidence demonstrated a significant potential for unconstitutional application of the ordinance"). Nonetheless, Richard Ramos' citations to such evidence in this case, cannot serve as a substitute for a legal claim regarding the manner in which the ordinance violates the state constitution.

[22] The proper analytic framework for making such a claim was first adopted in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). "Specifically, we enumerated six factors to be considered: (1) persuasive relevant federal precedents; (2) the text of relevant constitutional provisions; (3) historical insights into the intent of our constitutional forebears; (4) related Connecticut precedents; (5) persuasive precedents of other state courts; and (6) contemporary understandings of applicable economic and sociological norms. Id.; see also *State* v. *Tuchman*, 242 Conn. 345, 360, 699 A.2d 952 (1997); *State* v. *McDougal*, 241 Conn. 502, 515–16, 699 A.2d 872 (1997); *State* v. *Webb*, 238 Conn. 389, 402, 680 A.2d 147 (1996)." *State* v. *Griffin*, 251 Conn. 671, 684, 741 A.2d 913 (1999).

*dently guaranteed* under our state constitution renders the ordinance invalid, Richard Ramos also claims that, "[e]ven to the extent that the scope of protected free speech rights *may be coextensive* under the state and federal constitutions, the conclusory language of the exception is too imprecise to provide adequate protection for the exercise of free speech rights." (Emphasis added.) We conclude, for reasons hereinafter provided, that *to the extent that such rights are equivalent under the state and federal constitution*, such a claim is beyond the scope of the certified question, and indeed, beyond the purview of the certification statute pursuant to which we accepted this case. Public Act No. 99-107 provides federal courts with authoritative answers to questions regarding state law. It is not designed, as Richard Ramos' argument suggests, to provide this court with the ability to review federal questions that are being litigated in the appropriate federal fora.

The relevant certified question is "[w]hether [the town's ordinance] violates minors' rights of free speech and assembly as secured by Article First, §§ 4, 5, and 14, of the *Connecticut constitution?*" (Emphasis added.) By accepting this certified question, we agreed to determine whether "the protections afforded to the citizens of this state by our own constitution *go beyond those provided by the federal constitution*, as that document has been interpreted by the United States Supreme Court. *State* v. *Dukes*, 209 Conn. 98, 112, 547 A.2d 10 (1988); *State* v. *Stoddard*, 206 Conn. 157, 166, 537 A.2d 446 (1988). . . . *State* v. *Geisler*, [222 Conn. 672, 684, 610 A.2d 1225 (1992)], quoting *State* v. *Marsala*, 216 Conn. 150, 160, 579 A.2d 58 (1990)." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Linares*, supra, 232 Conn. 379. If we were to consider whether the ordinance violated rights *not independently guaranteed under the state constitution*, we essentially would be granting Richard Ramos

review of his federal constitutional claim in this court, notwithstanding the existence of a federal District Court opinion on his claim; *Ramos ex rel. Ramos* v. *Vernon,* supra, 48 F. Sup. 2d 176; and an appeal pending in the federal Court of Appeals. See *Ramos ex rel. Ramos* v. *Vernon,* United States Court of Appeals, Docket No. 99-7772 (2d Cir. 2000). Given the procedural posture in this case, in which Richard Ramos sought to adjudicate federal constitutional questions in federal court, we decline the invitation to consider state constitutional questions other than those that implicate rights that *"go beyond those provided by the federal constitution . . . ."* (Emphasis added; internal quotation marks omitted.) *State* v. *Linares,* supra, 379.

## III

## CERTIFIED QUESTION NUMBER TWO: SEARCH AND SEIZURE CLAIM

Certified question number two requires us to consider the facial validity of the ordinance against a challenge that it violates minors' rights to be free from unreasonable searches and seizures under article first, § 7, of the Connecticut constitution. See footnote 18 of this opinion. Unlike challenges premised upon the overbreadth doctrine discussed in part II of this opinion, we previously have not considered a facial challenge premised upon the right to be free from unreasonable searches and seizures.[23] We have not, however, refused

[23] For example, in all of the cases from this court cited in support of Richard Ramos' claims under article first, § 7, we had a factual record upon which to determine the reach of that constitutional provision. See generally *State* v. *Donahue,* 251 Conn. 636, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000); *State* v. *Oquendo,* 223 Conn. 635, 613 A.2d 1300 (1992); *State* v. *Geisler,* supra, 222 Conn. 672; *State* v. *Marsala,* supra, 216 Conn. 150; *State* v. *Dukes,* supra, 209 Conn. 98; *State* v. *Morrill,* 205 Conn. 560, 534 A.2d 1165 (1987). We also note that, although the defendant cites to *State* v. *Stoddard,* 206 Conn. 157, 164–67, 537 A.2d 446 (1988), in support of his claim under article first, § 7, of the Connecticut constitution, *Stoddard* involved a claim under article first, § 8, of the Connecticut constitution and therefore is inapposite to this claim.

to consider such a challenge either. Federal courts have considered facial challenges premised upon the protection from unreasonable searches and seizures located in the fourth amendment to the United States constitution. See, e.g., *Skinner* v. *Railway Labor Executives' Assn.*, 489 U.S. 602, 614, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) (considering facial challenge to drug testing program); *American Federation of Government Employees, AFL-CIO* v. *Skinner*, 885 F.2d 884, 894 (D.C. Cir. 1989) (same). We see no basis upon which to distinguish these cases and believe that there is no reason to have a significantly more restrictive body of law regarding facial challenges premised upon the search and seizure provision in our state constitution. Accordingly, we consider Richard Ramos' facial challenge premised upon article first, § 7, on the merits.

Richard Ramos claims the ordinance violates minors' right to be free from unreasonable searches and seizures. The defendants argue in response that, because the ordinance itself proscribes the presence of minors in a public place during curfew hours,[24] if an officer has "a particularized and objective basis for suspecting the particular person"; (internal quotation marks omitted) *State* v. *Oquendo*, 223 Conn. 635, 654, 613 A.2d 1300 (1992); is violating the curfew, then the seizure of a person is valid under the state constitution. We agree with the defendants.

In order to prevail on his claim under the state constitution, as we noted in part II of this opinion, Richard Ramos must establish that the ordinance violates rights that "*go beyond those provided by the federal constitution* . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Linares*, supra, 232 Conn. 379. We agree with Richard Ramos that we previously have con-

---

[24] That is, unless the minor's conduct falls within one of the ordinance's exceptions. See Curfew Ordinance § 8-4 (c) and (d).

cluded that, in certain circumstances, article first, § 7, affords more expansive protection against unreasonable searches and seizures than the federal constitution. See, e.g., *State* v. *Oquendo*, supra, 223 Conn. 649. We disagree, however, with his argument that the ordinance violates minors' rights under the state constitution because it provides the predicate for suspicionless investigatory stops of minors and thereby subjects them to capricious seizures.

We begin by noting that article first, § 7, does not confer an "absolute right to be free from searches and seizures, a right that cannot be limited by the government's power to criminalize certain forms of behavior." *Waters* v. *Barry*, supra, 711 F. Sup. 1138. Rather, the seizure of a minor by a law enforcement officer comports with constitutional requirements if the officer effectuating the seizure has a " 'particularized and objective basis' "; *State* v. *Oquendo*, supra, 223 Conn. 654; for concluding that the minor is engaged in a proscribed activity.

"Article first, §§ 7 and 9 of our state constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. *State* v. *Mitchell*, [204 Conn. 187, 195, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987)]; *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990). *State* v. *Oquendo*, [supra, 223 Conn. 654]. In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived

therefrom. . . . These standards, which mirror those set forth by the United States Supreme Court in *Terry* v. *Ohio*, [392 U.S. 1, 20–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)], with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, §§ 7 and 9 of our state constitution." (Internal quotation marks omitted.) *State* v. *Donahue*, 251 Conn. 636, 643–44, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000).

Richard Ramos' argument that the ordinance permits the police to detain a minor who, although apparently in violation of the imposed curfew, is not engaged in a wrongful activity, *overlooks the fact that the ordinance itself defines conduct that gives rise to a particularized suspicion of wrongful conduct.* By virtue of the terms of the ordinance, a minor engages in wrongful conduct by remaining in public during the prohibited hours, unless one of the enumerated exceptions listed in the ordinance applies. Thus, a police officer has a reasonable basis for suspecting that an individual is engaged in conduct that is proscribed by the ordinance, and thereby, ipso facto, wrongful, upon observing an individual who appears to be a minor in a public location after curfew, when one of the exceptions is not readily apparent. Therefore, when a police officer stops a minor in accordance with the terms of the ordinance, the detention is justified. Accordingly, Richard Ramos' claim that the ordinance, on its face, violates article first, § 7, fails.

Our conclusion that the ordinance does not violate minors' rights to be free from unreasonable searches and seizures is consistent with the reasoning of other courts that have considered challenges to juvenile curfew ordinances under the fourth amendment to the federal constitution. See, e.g., *Hutchins* v. *District of Columbia*, 188 F.3d 531, 548 (D.C. Cir. 1999); *Waters* v. *Barry*, supra, 711 F. Sup. 1138. The court in *Waters*

stated: "Although [the plaintiffs'] argument is here framed in terms of the Fourth Amendment, they are ultimately complaining only of the arbitrariness and irrationality of the *substantive* offense specified in the [District of Columbia's curfew statute]. . . . The plaintiffs' Fourth Amendment argument is thus redundant in light of their substantive challenges to the [statute]." (Emphasis in original.) *Waters* v. *Barry*, supra, 1138 n.28.

Similarly, in this case, we conclude that the essence of Richard Ramos' argument is his objection to the town's criminalization, absent certain exceptions, of the public presence of juveniles during curfew hours. We consider these substantive constitutional challenges in parts II, IV, V, VI and VII of this opinion. The prohibitions in the ordinance themselves, however, provide valid substantive references for guiding a police officer in his or her determination of whether there exists a "particularized and objective basis for suspecting the particular person stopped of criminal activity." (Internal quotation marks omitted.) *State* v. *Oquendo*, supra, 223 Conn. 654.

IV

CERTIFIED QUESTION NUMBER THREE:
PERSONAL LIBERTY CLAIM

Certified question number three requires us to pass upon the facial validity of the ordinance against a challenge that it violates minors' rights of personal liberty as provided for under article first, § 9, of the Connecticut constitution. See footnote 18 of this opinion. As in parts II and III of this opinion, we first determine whether it is proper for a plaintiff to bring a facial challenge under article first, § 9, of the Connecticut constitution. Although not as common as facial challenges based upon the overbreadth doctrine, we previously have considered facial challenges premised upon article first,

§ 9, of the Connecticut constitution. See *State* v. *Ross*, 230 Conn. 183, 249–52, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995) (considering facial claim challenging death penalty); *State* v. *Joyner*, supra, 225 Conn. 457–72 (considering facial claim challenging statute requiring criminal defendants to prove insanity). Accordingly, we consider Richard Ramos' challenge premised upon article first, § 9, on the merits.

We distill three distinct arguments from Richard Ramos in support of his claim under article first, § 9. None of the arguments, however, is persuasive. First, Richard Ramos correctly notes that we previously have concluded that article first, § 9, does not forbid investigatory stops if a police officer has "a reasonable and articulable suspicion that a person has committed or is about to commit a crime." *State* v. *Lamme*, supra, 216 Conn. 184. Richard Ramos then argues that "the investigatory stops authorized by the curfew ordinance are not based on any suspicion that the individual being stopped has committed or is about to commit a crime." We disagree. The investigatory stops authorized by the ordinance are based on a officer's suspicion that an individual has committed or is about to commit a violation *of the ordinance itself.* We rejected an identical argument in part III of this opinion with regard to Richard Ramos' claim under article first, § 7. We find his reasoning similarly unpersuasive with regard to his claim under article first, § 9.

Second, Richard Ramos appears to argue that, because the ordinance allegedly lacks statutory or common-law authority, police stops based upon the ordinance are not "clearly warranted by law" as required by article first, § 9. To the extent that this argument is intended to be separate from the one rejected in the preceding paragraph, the basis for this assertion appears to be an argument that article first, § 9, requires

municipal ordinances that restrict personal liberty to be authorized by either statutory or common–law authority in order to be valid. Richard Ramos has not pointed, however, to any authority, nor have we found any case law construing article first, § 9, to contain such a requirement. Therefore, we conclude that police stops pursuant to the ordinance are "clearly warranted by law"; Conn. Const., art. I, § 9; namely, they are authorized by the ordinance itself.

Third, Richard Ramos argues that article first, § 9, imposes "an independent state constitutional obligation of clarity in laws that authorize interference with personal liberty." He argues that, as discussed in his vagueness challenge predicated upon article first, § 8, of the Connecticut constitution; see part VII of this opinion; the ordinance is "impermissibly vague because it fails to provide fair notice of what it prohibits [and that] [t]his infirmity constitutes an independent violation of the obligation of clarity imposed by [article first] § 9." Beyond his mere assertion, however, that article first, § 9, imposes an "independent state constitutional obligation," Richard Ramos has failed to make a legal argument that the vagueness standard applicable to challenges premised upon article first, § 9, is any more stringent than the standard imposed by article first, § 8. Therefore, because we conclude in part VII of this opinion that the ordinance is not unconstitutionally vague in violation of article first, § 8, we conclude that the ordinance is not unconstitutionally vague in violation of article first, § 9. Accordingly, we conclude that Richard Ramos' claim that the ordinance, on its face, violates article first, § 9, fails.

## V

### CERTIFIED QUESTION NUMBER FOUR: EQUAL PROTECTION CLAIM

Certified question number four asks us to consider the facial validity of the ordinance against a challenge

that it violates minors' rights of equal protection as provided for under article first, §§ 1 and 20, of the Connecticut constitution. See footnote 18 of this opinion. We first must determine whether it is proper for a plaintiff to bring a facial challenge under these consitutional provisions.

We begin by noting that we previously have stated that "[t]he law governing equal protection claims is well established. To implicate the equal protection clauses under the state and federal constitutions . . . it is necessary that the state statute in question, either *on its face* or in practice, treat persons standing in the same relation to it differently. . . . *State* v. *Morales*, [240 Conn. 727, 738–39, 694 A.2d 758 (1997)]; *State* v. *Matos*, [240 Conn. 743, 761, 694 A.2d 775 (1997)]; *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, [239 Conn. 708, 755, 687 A.2d 506 (1997)]. Consequently, [a litigant] must show, as a threshold matter, that [the ordinance], either *on its face* or as applied, treats similarly situated individuals differently." (Emphasis altered; internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 125–26, 715 A.2d 652 (1998). Thus, we clearly have expressed a willingness to consider facial equal protection challenges under the state constitution.[25] Guided by federal courts that routinely have considered equal protection challenges premised upon the federal constitution; see, e.g., *Vacco* v. *Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293, 138 L. Ed. 2d 834 (1997) (considering facial challenge to law prohibiting assisted suicide premised upon equal protection clause in federal constitution); *Batra* v. *Board of Regents of the University of Nebraska*, 79 F.3d 717, 721 (8th Cir.

---

[25] We acknowledge that our treatment of this issue has not been entirely consistent and that, on occasion, we have been unwilling to consider facial challenges premised upon the equal protection clause of the state constitution on their merits. See, e.g., *City Recycling, Inc.* v. *State*, 247 Conn. 751, 758–59, 725 A.2d 937 (1999).

1996) ("[m]ost equal protection cases involve *facial* or as-applied challenges to legislative action" [emphasis added]); we see no reason why our state constitutional facial challenge equal protection jurisprudence should be more restrictive than that applied to claims brought pursuant to the federal constitution. Accordingly, we consider Richard Ramos' challenge premised upon article first, §§ 1 and 20, on the merits.

A

We begin by clarifying the scope of potential rights under the state constitution that we are considering. In order to prevail on his claim under the state constitution, as we noted in part II C of this opinion, Richard Ramos must establish that the ordinance violates rights that "*go beyond those provided by the federal constitution . . . .*" (Emphasis added.) *State* v. *Linares*, supra, 232 Conn. 379. Therefore, we reject Richard Ramos' argument that, because "the state constitution provides an independent source of protection . . . for rights that are also protected by the federal constitution," we must consider whether rights that are coextensive under the state and federal constitution are violated by the ordinance. We conclude, for reasons provided in part II C of this opinion, that *to the extent that such rights are equivalent under the state and federal constitution*, such a claim is beyond the scope of the certified question.

Richard Ramos asserts that we have recognized that article first, §§ 1 and 20, "*may* provide greater protection than the federal constitution in appropriate cases." (Emphasis added.) We agree that we have not foreclosed the possibility that, depending upon the facts and circumstances, the state constitution may afford greater protection than the federal constitution with regard to equal protection claims. See *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 812–13 n.15,

730 A.2d 1149 (1999) (noting that our previous case law "should not be read to suggest that the state equal protection provision can never have an independent meaning from the equal protection provision in the federal constitution"). In order to prevail on such a claim under the state constitution, however, Richard Ramos must identify the specific additional rights to equal protection recognized under the state constitution, and describe how those rights are infringed upon by the ordinance. See id. ("[i]f a party does not provide an independent analysis asserting the existence of greater protection under the state constitutional provision than its federal counterpart . . . the federal equal protection standard is considered prevailing for the purposes of our review of both the state and federal equal protection claims"). We next consider whether Richard Ramos has provided such an argument.

B

Richard Ramos claims that "[e]nforcement of the Curfew Ordinance . . . burdens the exercise of fundamental constitutional rights protected by the state and federal constitutions."[26] The defendants claim that Richard Ramos has failed to establish that the ordinance violates the fundamental rights of minors. We agree with the defendants.[27]

---

[26] We assume that, by using such language, Richard Ramos means to assert, that certain rights independently guaranteed under the state constitution are infringed upon by the ordinance. As noted in part V A of this opinion, we will not review any claim of infringement of rights guaranteed equally under both the state and federal constitutions. We also note that Richard Ramos does not assert that minors are a suspect class.

[27] Because we agree with the defendants that Richard Ramos has failed to establish that the ordinance violates minors' fundamental rights, we need not consider the defendants' alternative argument, that "the interest in the safety and well-being of . . . minors requires the use of an intermediate standard of scrutiny" rather than the strict scrutiny ordinarily employed in reviewing laws that burden fundamental rights. See, e.g., *Schleifer* v. *Charlottesville*, 159 F.3d 843, 846–47 (4th Cir. 1998), cert. denied, 526 U.S. 1018, 119 S. Ct. 1252, 143 L. Ed. 2d 349 (1999) (applying intermediate scrutiny to review of juvenile curfew ordinance).

We begin by providing the relevant constitutional framework for adjudicating such claims. "When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) *Barton* v. *Ducci Electrical Contractors, Inc.*, supra, 248 Conn. 813–14.

We also again note that "as in any constitutional challenge to the validity of [an ordinance], the [ordinance] is presumed constitutional . . . and [t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it . . . ." (Internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 558, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). Thus, the heavy burden is on Richard Ramos to establish "beyond a reasonable doubt"; *State* v. *Floyd*, supra, 217 Conn. 79; that the ordinance infringes upon minors' fundamental rights. We conclude, for reasons hereinafter provided, that Richard Ramos has not met that burden.

Richard Ramos claims that the ordinance violates minors' "right to travel within the state," and their "rights of free speech, freedom of association and free-

dom of assembly."[28] With regard to the latter three rights, however, he provides no additional argument beyond that which we previously rejected in part II of this opinion. Accordingly, we conclude that Richard Ramos has failed to establish that the ordinance implicates minors' fundamental rights to free speech, association or assembly.

With regard to his argument that the ordinance violates minors' state constitutional right to intrastate travel, his lone citation to *Bruno* v. *Civil Service Commission*, 192 Conn. 335, 472 A.2d 328 (1984), without any explanation as to the manner in which the nocturnal curfew ordinance at issue in this case is similar to the durational residency requirements at issue in *Bruno*, is insufficient to establish beyond a reasonable doubt that the ordinance violates the fundamental rights of minors. Therefore, we conclude that Richard Ramos has failed to establish that the ordinance violates minors' right to travel within the state.

Richard Ramos also argues that "*[m]ost* of the courts that have addressed juvenile curfew laws, including the federal District Court in this case, have assumed that such laws implicate fundamental rights under the federal constitution." (Emphasis added.) We agree with Richard Ramos, that *some* federal courts have made such an assumption with regard to rights under the federal constitution. See *Nunez* v. *San Diego*, supra, 114 F.3d 944; *Ramos ex rel. Ramos* v. *Vernon*, supra,

---

[28] Richard Ramos asserts in his reply brief, without additional argument, that "[t]he [ordinance] implicates the fundamental rights protected by article first, §§ 4, 5, 7, 8, 9, 10 and 14." To the extent that he means to incorporate the substantive arguments made in his principal brief regarding his state constitutional rights relating to free speech; Conn. Const., art. I, §§ 4, 5, 14; search and seizure; Conn. Const., art. I, § 7; personal liberty; Conn. Const., art. I, § 9; parents' rights of due process; Conn. Const., art. I, § 10; and vagueness; Conn. Const., art. I, § 8; we reject those arguments in parts II, III, IV, VI and VII of this opinion, respectively.

48 F. Sup. 2d 184.[29] In contrast, other courts that have given fuller consideration to the question of whether a juvenile curfew ordinance violates minors' fundamental rights have rejected such arguments. See *Hutchins* v. *District of Columbia,* supra, 188 F.3d 538 (plurality opinion). In any event, it is beyond dispute that it is far from universally accepted that juvenile curfews infringe upon minors' fundamental rights under the federal constitution. See, e.g., id. Furthermore, even were such an assumption universally accepted, Richard Ramos would still need to establish that the fundamental rights of minors *independently guaranteed under the state constitution* are implicated by the ordinance. See part V A of this opinion. Thus, it is incumbent upon Richard Ramos to establish, rather than assume, that the ordinance violates minors' fundamental rights. In the absence of any legal argument that such rights have been violated, we are compelled to conclude that Richard Ramos has failed to establish that the ordinance violates minors' fundamental rights under the state constitution.

C

Having determined that Richard Ramos has failed to establish that the ordinance infringes upon any fundamental rights or suspect classes, we apply rational basis review of the ordinance to determine its constitutionality. "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statu-

---

[29] We disagree, however, with Richard Ramos' suggestion that the United States Court of Appeals for the Fifth Circuit in *Qutb* v. *Strauss,* 11 F.3d 488, 492 (5th Cir. 1993), cert. denied sub nom. *Qutb* v. *Bartlett,* 511 U.S. 1127, 114 S. Ct. 2134, 128 L. Ed. 2d. 864 (1994), determined that the ordinance at issue in that case violated minors' fundamental rights. The court in *Qutb* noted that *"[f]or purposes of our analysis, we assume without deciding that the right to move about freely is a fundamental right"* implicated by the ordinance. (Emphasis added.) Id.

tory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. . . . The test . . . is whether this court can conceive of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis. . . . Further, the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." (Citations omitted; internal quotation marks omitted.) *Barton* v. *Ducci Electrical Contractors, Inc.,* supra, 248 Conn. 817–18.

We have no difficulty in ascertaining a rational basis for the ordinance. The District Court found that "the plaintiffs do not contend that [the town's] reasons for enacting the curfew do not constitute important or compelling governmental interests." *Ramos ex rel. Ramos* v. *Vernon,* supra, 48 F. Sup. 2d 184. The District Court also found that, when the ordinance was enacted, there was a perception of increased drug and gang activity in the town, a sixteen year old town resident recently had been murdered, and a youth survey indicated that many of the youths in the town were concerned about guns and violence. Id., 185. It is certainly conceivable that the town council might have believed that the enactment of the ordinance would be rationally related to forwarding the town's interest in "protecting their entire community from crime . . . and in protecting the safety and welfare of minors specifically . . . ." (Citations omitted.) Id., 184–85. Therefore, we conclude that the enactment of the ordinance was rationally related to a legitimate government interest. Accordingly, Richard Ramos' claim that the ordinance, on its face, violates article first, §§ 1 and 20, fails.

VI

## CERTIFIED QUESTION NUMBER FIVE: DUE PROCESS CLAIM

Certified question number five requires us to pass upon the facial validity of the ordinance against a challenge that it violates parents' rights of due process as provided for under article first, § 10, of the Connecticut constitution. See footnote 18 of this opinion. We first determine whether it is proper for a plaintiff to bring a facial challenge under article first, § 10, of the Connecticut constitution. Federal courts, including the United States Supreme Court, have routinely considered facial challenges premised upon the due process clause of the federal constitution. See, e.g., *Reno* v. *Flores*, 507 U.S. 292, 299–300, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993) (considering facial challenge to immigration regulation); *Planned Parenthood* v. *Casey*, 505 U.S. 833, 846–53, 121 S. Ct. 2791, 120 L. Ed. 2d 574 (1992) (considering facial attack to abortion statute); see generally M. Dorf, "Facial Challenges to State and Federal Statutes," 46 Stan. L. Rev. 235 (1994); J. Ford, "The *Casey* Standard for Evaluating Facial Attacks on Abortion Statutes," 95 Mich. L. Rev. 1443 (1997).

In contrast, our case law has reflected a reluctance to consider facial challenges premised upon the due process clause of the federal and state constitutions. See, e.g., *City Recycling, Inc.* v. *State*, 247 Conn. 751, 759, 725 A.2d 937 (1999) (declining to consider facial challenge to statute under due process clause of state constitution because "the [issue] of *due process . . .* can be addressed only in light of the facts of record" [emphasis added]); *Shawmut Bank, N.A.* v. *Valley Farms*, 222 Conn. 361, 368, 610 A.2d 652, cert. dismissed, 505 U.S. 1247, 113 S. Ct. 28, 120 L. Ed. 2d 952 (1992) (declining to consider facial challenge to replevin statute under due process clause of federal constitution

because "[t]he fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid"). These cases do not, however, stand for the proposition that we are *uniformly* unwilling to consider such challenges. Furthermore, in neither *City Recycling, Inc.*, nor in *Shawmut Bank, N.A.*, nor in any other case, have we articulated a reason why we should be significantly more restrictive in our consideration of due process facial challenges than federal courts. Indeed, we see no basis upon which to distinguish this federal case law. Accordingly, we consider Janet Ramos' challenge to the ordinance premised upon article first, § 10, on the merits.

A

Janet Ramos claims that the ordinance violates her right to substantive due process under article first, § 10. She claims that we have recognized that parents have a fundamental constitutional right "to raise their children without excessive government interference"; *Castagno* v. *Wholean*, 239 Conn. 336, 343, 684 A.2d 1181 (1996); and that laws affecting parental autonomy are strictly scrutinized. Id., 344. She further claims that the curfew ordinance intrudes upon parental autonomy and is not narrowly drawn to address a compelling governmental interest as is required by the strict scrutiny standard of review. The defendants claim that Janet Ramos has failed to establish that parents have broader rights regarding the raising of their children under the state constitution than they do under the federal constitution. We agree with the defendants.

We begin by providing the relevant constitutional parameters within which we consider Janet Ramos' state constitutional claims. Our case law construing the due process clause of the federal constitution provides a useful "framework for state constitutional analysis

and in interpreting state constitutional provisions." *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 317, 640 A.2d 101 (1994).[30] To that end, although our previous case law considering substantive due process claims under our state constitution has not fully articulated the essence of such a challenge,[31] the following quote describing the guarantees inherent in the due process clause of our federal constitution is also descriptive of the liberties contained in the due process clause in article first, § 10, of our state constitution. "It is axiomatic that the due process clause not only guarantees fair procedures in any governmental deprivation of life, liberty, or property, but also encompasses a substantive sphere . . . barring certain government actions regardless of the fairness of the procedures used to implement them . . . . This basic protection embodies the democratic principle that the good sense of mankind has at last settled down to this: that [due process was] intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice. . . .

"Despite the important role of substantive due process in securing our fundamental liberties, that guarantee does not entail a body of constitutional law imposing

[30] Although *Fair Cadillac-Oldsmobile Isuzu Partnership* sustained a challenge to a statute prohibiting the sale of motor vehicles on Sunday premised upon the substantive due process guarantees of article first, § 8, the same reasoning is applicable to substantive due process challenges brought pursuant to article first, § 10.

[31] Our substantive due process case law under the state constitution, however, clearly establishes that certain fundamental rights are protected. See, e.g., *State* v. *Ross*, supra, 230 Conn. 246 (concluding that due process clauses of article first, §§ 8 and 9, contained prohibition against cruel and unusual punishment); *Campbell* v. *Board of Education*, 193 Conn. 93, 105, 475 A.2d 289 (1984) (applying rational basis scrutiny to substantive due process challenge premised, in part, on article first, §§ 8 and 10, because school board policy at issue did "not jeopardize any fundamental right under our state constitution").

liability whenever someone cloaked with state authority causes harm. . . . Rather, substantive due process has been held to protect against only the most arbitrary and conscience shocking governmental intrusions into the personal realm . . . ." (Citations omitted; internal quotation marks omitted.) *ATC Partnership* v. *Windham,* 251 Conn. 597, 605–606, 741 A.2d 305 (1999), cert. denied, 530 U.S. 1214, 120 S. Ct. 2217, 147 L. Ed. 2d 249 (2000).

We note, however, that "it is clear that our adoption, for purposes of state constitutional analysis, of an analytical framework used under the federal constitution does not preclude us from concluding that a statute that would be valid under the federal constitution is nevertheless invalid under our state constitution." *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey,* supra, 229 Conn. 317. Indeed, in order to prevail on her claim under the state constitution, as we noted in part V A of this opinion, Janet Ramos must establish that the ordinance violates rights that "*go beyond those provided by the federal constitution* . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Linares,* supra, 232 Conn. 379.

Although earlier case law indicated that "the due process provisions of both constitutions have the same meaning and the same limitations"; *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 343 (1979); *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 569 n.5, 409 A.2d 1020 (1979); more recent case law has suggested that our state constitution *may,* in certain instances, afford greater substantive due process rights than the federal constitution. For example, in *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey,* supra, 229 Conn. 316, a case involving a substantive due process challenge brought under the state constitution, we stated: "It is beyond dispute that we are not bound by federal precedents in interpreting

our own state constitutional provisions. [F]ederal decisional law is not a lid on the protections guaranteed under our state constitution."[32] (Internal quotation marks omitted.) See also *Sweetman* v. *State Elections Enforcement Commission*, supra, 249 Conn. 319 n.19 (declining to consider whether state constitution afforded greater substantive due process rights than federal constitution because issue not adequately briefed).

In this case, we need not consider, however, whether cases such as *Caldor's, Inc.* v. *Bedding Barn, Inc.*, supra, 177 Conn. 304, and *Society for Savings* v. *Chestnut Estates, Inc.*, supra, 176 Conn. 563, should be overruled expressly to the extent that they suggest that substantive due process analysis is identical under the state and federal constitution. That is because, irrespective of whether, *in certain circumstances*, the due process clauses of our state constitution may provide greater protections than federal substantive due process analysis, there is no support for the proposition that, *in the circumstances relevant to this case*, our state constitution affords any greater substantive due process rights than the federal constitution. As we discuss in the paragraphs that follow, Janet Ramos has provided no support for even the broad proposition that our state constitution contains greater rights of

[32] As we noted previously; see footnote 30 of this opinion; in *Fair Cadillac-Oldsmobile Isuzu Partnership*, we sustained a challenge premised upon the substantive due process guarantees of article first, § 8. There is nothing in that case, however, to suggest that its reasoning was limited to substantive due process challenges premised upon article first, § 8. Furthermore, in *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, supra, 229 Conn. 316, we supported the proposition that the state constitution may afford greater substantive due process protections than the federal constitution by citing to *Doe* v. *Maher*, 40 Conn. Sup. 394, 419, 515 A.2d 134 (1986), a case in which a substantive due process challenge to a regulation restricting the funding of certain abortions under article first, § 10, was sustained.

"family autonomy" than does the federal constitution.[33] Likewise, there is nothing to support the more specific proposition that parents have a state constitutional right "to allow their children to be on the streets and in public places at all hours of the night without any adult supervision"; *Ramos ex rel. Ramos* v. *Vernon*, supra, 48 F. Sup. 2d 187; as the District Court in this case characterized Janet Ramos' claim.

We begin by noting that our jurisprudence has identified a starting point for discovering fundamental rights guaranteed protection under our state constitution from "arbitrary and conscience shocking governmental intrusions into the personal realm . . . ." *ATC Partnership* v. *Windham*, supra, 251 Conn. 606. In *State* v. *Ross*, supra, 230 Conn. 246, we stated: "In determining the scope of our state constitution's due process clauses, we have taken as a point of departure those constitutional or quasi-constitutional rights that were recognized at common law in this state prior to 1818."

In this case, Janet Ramos has provided no historical evidence of any constitutional or quasi-constitutional

---

[33] We recognize, with respect to substantive due process analysis, that broader characterizations of a particular right are more easily sustained than more narrow conceptions. Compare *Hutchins* v. *District of Columbia*, supra, 188 F.3d 538 (plurality opinion) (substantive due process analysis of juvenile curfew "must begin with a careful description of the asserted right for the more general is the right's description, i.e., the free movement of people, the easier is the extension of substantive due process"); id., 554 (Rogers, J., concurring in part and dissenting in part) ("At first glance, the plurality's narrow construction of the contested right seems sensible. This country lacks a tradition of tolerance for the nocturnal wanderlust of minors, and the plurality's recognition of this uncontested fact avoids the more searching analysis that fundamental rights review entails. But, on closer inspection, the plurality's narrow statement of what is at issue relies on a suspect methodology."). In the present case, we need not resolve whether a broad or narrow characterization of the right of parental autonomy is appropriate, because Janet Ramos has failed to establish that our state constitution affords any greater protection than the federal constitution even under the broadest possible interpretation of that right.

rights maintained by parents that were recognized at common law in this state prior to 1818. Neither has she pointed to any case law in which we have concluded that the state constitution affords greater recognition of parental autonomy than the federal constitution. Although the primary case upon which she bases her argument stands for the proposition that the right to family autonomy is fundamental; *Castagno* v. *Wholean*, supra, 239 Conn. 344; that case does not even mention the Connecticut constitution. Therefore, *Castagno* does not stand for the proposition that rights of family autonomy are any greater under the Connecticut constitution than under the federal constitution. Neither does any other case upon which Janet Ramos bases her argument. See generally *Ascuitto* v. *Farricielli*, 244 Conn. 692, 711 A.2d 708 (1998); *Dubay* v. *Irish*, 207 Conn. 518, 542 A.2d 711 (1988); *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 420 A.2d 875 (1979).

Janet Ramos also cites to four federal cases construing juvenile curfew laws under the federal constitution that she claims support her contention that the ordinance in this case violates the state constitution. See *Nunez* v. *San Diego*, supra, 114 F.3d 949; *Johnson* v. *Opelousas*, 658 F.2d 1065, 1074 (5th Cir. 1981); *Waters* v. *Barry*, supra, 711 F. Sup. 1128–31; *McCollester* v. *Keene*, 586 F. Sup. 1381, 1386 (D.N.H. 1984). Two of the four cases cited did not resolve any claim by a parent that a juvenile curfew ordinance violated his or her rights of substantive due process and, therefore, they are inapposite to the claim raised herein. See generally *Johnson* v. *Opelousas*, supra, 1065; *Waters* v. *Barry*, supra, 1125. Although the court in *Nunez* did hold that the curfew at issue in that case violated parents' substantive due process rights under the federal constitution, it based its holding on the fact that "[t]he ordinance does not allow an adult to pre-approve even a specific activity after curfew hours unless a custodial adult actu-

ally accompanies the minor." *Nunez* v. *San Diego*, supra, 952. The ordinance at issue in the present case, in contrast, expressly excepts from liability those minors involved in a "specific business or activity directed or permitted by his parent . . . ." Curfew Ordinance § 8-4 (c) (1). Likewise, the curfew ordinance at issue in *McCollester* v. *Keene*, supra, 1386, did not contain a parental consent exception such as the one provided in the ordinance here. See *McCollester* v. *Keene*, 514 F. Sup. 1046, 1052 (D.N.H. 1981) (describing how parental liability could arise under ordinance if parent allowed minor to continue various specific activities beyond curfew), rev'd on jurisdictional grounds, 668 F.2d 617 (1st Cir. 1982), on remand, 586 F. Sup. 1381 (D.N.H. 1984). Thus, none of the federal cases cited by Janet Ramos provides support for her claim. Furthermore, we note that several other courts have upheld juvenile curfews against challenges from parents claiming infringement of their rights of due process under the federal constitution. See, e.g., *Hutchins* v. *District of Columbia*, supra, 188 F.3d 540–41; *Schleifer* v. *Charlottesville*, 159 F.3d 843, 852–53 (4th Cir. 1998), cert. denied, 526 U.S. 1018, 119 S. Ct. 1252, 143 L. Ed. 2d 349 (1999); *Qutb* v. *Strauss*, 11 F.3d 488, 495–96 (5th Cir. 1993), cert. denied sub nom. *Qutb* v. *Bartlett*, 511 U.S. 1127, 114 S. Ct. 2134, 138 L. Ed. 2d 864 (1994).

Therefore, given the absence of any persuasive argument from Janet Ramos with respect to any of the aforementioned *Geisler* factors; see footnote 22 of this opinion; we conclude that she has failed to demonstrate that the rights of parental autonomy are any greater under the Connecticut constitution than they are under the federal constitution. A fortiori, her claim that the ordinance implicates such alleged fundamental rights fails.

## B

Having concluded that Janet Ramos has not established that the ordinance implicates any fundamental

rights, we apply rational basis review of the ordinance. See, e.g., *State* v. *Jason B.*, supra, 248 Conn. 560 (rational basis review applies to substantive due process claims that do not infringe upon fundamental rights). Equal protection rational basis review is "for all material purposes . . . indistinguishable from the analysis in which we would engage pursuant to a due process claim. See *State* v. *Matos*, supra, 240 Conn. 750 (test in rational basis review under substantive due process doctrine is whether the challenged [ordinance] has [a] reasonable relationship to any legitimate state purpose" . . . ); *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 239 Conn. 756 (under rational basis equal protection review, [i]f the [ordinance] does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge . . .) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 246 Conn. 132, 144, 716 A.2d 870 (1998). We previously concluded, in considering Richard Ramos' equal protection claim, that the ordinance was rationally related to a legitimate government interest. See part V C of this opinion. Therefore, we conclude, for purposes of Janet Ramos' substantive due process claim, that there is a rational basis for the ordinance. Accordingly, Janet Ramos' claim that the ordinance, on its face, violates article first, § 10, fails.

## VII

### CERTIFIED QUESTION NUMBER SIX:
### VAGUENESS CLAIM

The plaintiffs'[34] final claim is that the ordinance is facially invalid because it is unconstitutionally vague in violation of article first, § 8, of the Connecticut constitution. See footnote 18 of this opinion. They claim that

---

[34] We concluded in part I of this opinion that both Richard Ramos and Janet Ramos have standing to raise this claim.

the ordinance: (1) is not precise enough to provide police with the guidance necessary to avoid arbitrary intrusions into the lawful activities of Connecticut residents; and (2) interferes with the rights of free speech and assembly because the ordinance's first amendment exception; Curfew Ordinance § 8-4 (c) (1); is not sufficiently precise to protect against arbitrary enforcement under the state constitution. The defendants claim that the plaintiffs have failed to make any showing that the due process clause in the state constitution as it applies to a vagueness challenge affords any greater rights or protections than does the federal constitution. According to the defendants, in the absence of such a showing, the plaintiffs' claim must fail. We agree with the defendants.

A

We begin by discussing the plaintiffs' ability to bring a facial[35] challenge premised upon the claim that the law is unconstitutionally vague. "Where penal statutes . . . implicate rights protected by the first amendment, their meaning must be capable of precise ascertainment in order to repel a vagueness challenge. . . . Where first amendment rights are at stake, vague laws may cause citizens to avoid constitutionally protected conduct for fear of incurring criminal prosecution. . . . Due to this chilling effect which vague statutes can exert on first amendment liberties, [however] when those freedoms are at stake, the statute's constitutionality is tested for vagueness on its face." (Citations omitted; internal quotation marks omitted.) *State* v. *Proto*, supra, 203 Conn. 696–97; see also *State* v. *Linares*, supra, 232 Conn. 355 ("[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law

---

[35] We stress here that we are discussing only categories of facial vagueness challenges that we have recognized. A litigant also may pursue an "as applied" vagueness challenge. See, e.g., *Sweetman* v. *State Elections Enforcement Commission*, supra, 249 Conn. 322.

is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply. *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S. Ct. 1186, 71 L. Ed. 2d 362, reh. denied, 456 U.S. 950, 102 S. Ct. 2023, 72 L. Ed. 2d 476 [1982]. *State* v. *Indrisano*, 228 Conn. 795, 803–804, 640 A.2d 986 [1994]." [Internal quotation marks omitted.]).

Our case law also has suggested that it *may* be possible to bring a facial vagueness challenge outside of the context of free speech when a fundamental constitutional right is alleged to be violated by a law. See *State* v. *Wilchinski*, 242 Conn. 211, 217, 700 A.2d 1 (1997) ("[a]ssuming, without deciding, that [the challenged statute] implicates a fundamental constitutional right, and further assuming that we would be willing to engage in a facial vagueness analysis outside the context of the first amendment, we need not do so in this case"); *State* v. *Payne*, 240 Conn. 766, 777, 695 A.2d 525 (1997) (implying in dicta that facial challenge is appropriate when any fundamental constitutional right is challenged on vagueness grounds); *State* v. *Linares*, supra, 232 Conn. 355 (same); *State* v. *Pickering*, 180 Conn. 54, 62–63, 428 A.2d 322 (1980) (same).[36]

We now consider whether the plaintiffs' claim fits within either of these two categories. We begin by noting that, although the plaintiffs attempt to raise a vagueness claim implicating the right of free speech in their reply brief, their vagueness claim in their principal brief is devoid of any free speech argument. "It is a

---

[36] In addition, a litigant who is able to establish that a law is vague as applied to himself or herself, may be able to bring a facial challenge to the ordinance outside of the first amendment context. See *Packer* v. *Board of Education*, 246 Conn. 89, 106, 717 A.2d 117 (1998). This category, however, is not applicable to this case because the plaintiffs have not brought an "as applied" challenge to the ordinance.

well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997); *State* v. *Hill*, 237 Conn. 81, 97 n.23, 675 A.2d 866 (1996).

To the extent that the plaintiffs raised any free speech vagueness claim in their initial brief, the claim was raised in the "overbreadth" section of the brief.[37] As we noted previously, however, claims of vagueness and overbreadth are distinct claims. See footnote 20 of this opinion. We are not bound to consider either claim unless each is distinctly raised. See *State* v. *Indrisano*, supra, 228 Conn. 798 n.4.

Even if we were willing to consider that the claim raised in the overbreadth section of the plaintiffs' principal brief constituted a free speech vagueness claim, that claim does not entitle the plaintiffs to review for a separate reason. As we concluded in part II C of this opinion, that claim fails to make any argument that "the protections afforded to the citizens of this state by our own constitution *go beyond those provided by the federal constitution* . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Linares*, supra, 232 Conn. 379. Accordingly, we conclude that the plaintiffs have failed to raise any claim that the ordinance is facially vague because it infringes upon free speech rights independently guaranteed under the state constitution.

As we have discussed herein, our case law has also suggested that it *may* be possible to bring a facial vagueness challenge when a fundamental constitutional

---

[37] Richard Ramos claimed in that section that "[e]ven to the extent that the scope of protected free speech rights *may be coextensive* under the state and federal constitution, the conclusory language of the exception is too imprecise to provide adequate protection for the exercise of free speech rights." (Emphasis added.)

right, other than free speech, is alleged to be violated by an ordinance. Even if we were to assume, without deciding, that the challenged ordinance's alleged vagueness in the "authoriz[ation] [of] excessive police discretion" implicates a fundamental constitutional right,[38] and further that we would be willing to engage in a facial vagueness analysis outside the context of the first amendment, the plaintiffs' claim fails for the reasons outlined in part VII B of this opinion.

B

"Under the requirements of due process of law mandated by our federal and state constitutions, [an ordinance] must be sufficiently definite to enable a person to know what conduct he must avoid. *State* v. *Proto*, [supra, 203 Conn. 696]; *State* v. *Pickering*, [supra, 180 Conn. 59–60] . . . . [An ordinance] which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. *Connally* v. *General Construction Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, supra, 205 Conn. 469–70.

Furthermore, and particularly relevant for this case, "*[w]e have equated vagueness analysis under our state constitution with the corresponding federal constitu-*

---

[38] Richard Ramos claimed that the ordinance independently violated rights that could be considered fundamental constitutional rights. For example, he claimed that the ordinance violated his right to be free from unreasonable searches and seizures. See part III of this opinion. We assume, *for purposes of this opinion,* that such a claim raises a claim that a fundamental right is implicated by the ordinance. We further assume, *for purposes of this opinion,* that, by claiming that the ordinance is not precise enough to provide police with the guidance necessary to avoid arbitrary intrusions into the lawful activities of Connecticut residents, the plaintiffs raise a claim that the ordinance's vagueness is related to this deprivation of a fundamental constitutional right.

*tional analysis.* See *State* v. *Webb*, 238 Conn. 389, 533, 680 A.2d 147 (1996); *State* v. *DeFrancesco*, 235 Conn. 426, 443, 668 A.2d 348 (1995); *State* v. *Linares*, [supra, 232 Conn. 376–77]; *Bishop* v. *Kelly*, 206 Conn. 608, 611, 539 A.2d 108 (1988); *State* v. *White*, 204 Conn. 410, 414 n.1, 528 A.2d 811 (1987); *State* v. *Proto*, [supra, 203 Conn. 696]; *State* v. *Eason*, 192 Conn. 37, 45 n.9, 470 A.2d 688 (1984), overruled in part, *Paulsen* v. *Manson*, 203 Conn. 484, [491] 525 A.2d 1315 (1987)." (Emphasis added.) *Packer* v. *Board of Education*, 246 Conn. 89, 99, 717 A.2d 117 (1998).

In this case, the plaintiffs claim that the curfew is facially vague because it is "designed to authorize excessive police discretion." As with Richard Ramos' overbreadth challenge, the plaintiffs fail to make any legal argument,[39] independent of their factual allegations regarding the motivations behind the town council's enactment of the ordinance, and their factual allegations regarding enforcement of the ordinance, that the protections against vague statutes embodied in the due process clause of the state constitution *"go beyond those provided by the federal constitution . . . ."* (Emphasis added; internal quotation marks omitted.) *State* v. *Linares*, supra, 232 Conn. 379.[40]

In order to prevail on a claim under the state constitution, the plaintiffs would need to begin by identifying why our previous case law equating "vagueness analysis under our state constitution with the corresponding federal constitutional analysis"; *Packer* v. *Board of Edu-*

---

[39] The plaintiffs' citation to "Connecticut['s] law and policy [against] arbitrary intrusion by law enforcement authorities into the lawful activities of Connecticut residents" does not satisfy their burden of establishing that the ordinance is unconstitutional beyond a reasonable doubt.

[40] As with our holding in part II C of this opinion, we limit our consideration of the plaintiffs' arguments in this part to the extent that they raise a claim that the state constitution affords greater protection from vague statutes than does the federal constitution.

*cation*, supra, 246 Conn. 99; is incorrect. Next, the plaintiffs would need to identify the additional due process rights recognized under the state constitution, and describe how such rights are infringed upon by the vagueness of the ordinance.[41] In contrast, the plaintiffs in this case have not put forth any legal argument that our previous case law in this area was mistaken.

Therefore, "[w]e need not dwell on the [plaintiffs'] vagueness claims under the Connecticut constitution. . . . [We] cannot discern any reason . . . to analyze these issues any differently under the Connecticut constitution . . . . [The plaintiffs have] failed to persuade us that our state constitution mandates a different analysis [than federal constitutional analysis] or contrary result." (Citations omitted.) *State* v. *Linares*, supra, 232 Conn. 376–77. Accordingly, even if we were to assume that a stringent test should apply to the plaintiffs' claim; see part VII A of this opinion; we reject the plaintiffs' claim that the ordinance is facially vague in violation of article first, § 8, of the Connecticut constitution.

VIII

CONCLUSION

The answer to certified questions one through six is: No.

No costs will be taxed in this court to either party.

In this opinion BORDEN, NORCOTT, PALMER and VERTEFEUILLE, Js., concurred.

SULLIVAN, J., with whom MCDONALD, C. J., joins, concurring in part and concurring in the result. I agree with parts I, II and VII of the majority opinion. I would, however, for the reasons hereinafter provided, refuse

---

[41] As we noted previously, the proper analytic framework for developing such an argument is outlined in *State* v. *Geisler*, supra, 222 Conn. 684–86. See footnote 22 of this opinion.

to consider the facial challenges corresponding to certified questions two through five. Accordingly, I concur only in the result with respect to parts III, IV, V and VI of the majority opinion.

Certified questions two through five invite this court to pass upon the facial validity of the juvenile curfew ordinance of the named defendant, the town of Vernon (town), against challenges predicated upon article first, §§ 1, 7, 9, 10 and 20, of the Connecticut constitution. This court has shown a clear willingness to consider facial challenges under the state constitution in two limited areas: (1) free speech claims predicated upon the overbreadth doctrine; e.g., *State* v. *Linares*, 232 Conn. 345, 377–78, 655 A.2d 737 (1995); and (2) claims premised upon the vagueness doctrine. See, e.g., *Benjamin* v. *Bailey*, 234 Conn. 455, 482–84, 662 A.2d 1226 (1995). Therefore, I agree with the majority's consideration of the plaintiffs'[1] challenges premised upon overbreadth and vagueness in parts II and VII of the majority opinion, respectively.[2]

In contrast, this court is reluctant to consider facial challenges involving constitutional issues outside of these limited contexts. See *Shawmut Bank, N.A.* v. *Valley Farms*, 222 Conn. 361, 368, 610 A.2d 652, cert. dismissed, 505 U.S. 1247, 113 S. Ct. 28, 120 L. Ed. 2d 952 (1992) ("[t]he fact that the [Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine

---

[1] I also agree with part I of the majority opinion in which the majority concludes that the plaintiff, Richard Ramos, has standing to raise his free speech claim, and that both Richard Ramos and another plaintiff, Janet Ramos, have standing to raise their vagueness claims.

[2] I also agree with the majority's resolution of the plaintiffs' overbreadth and vagueness challenges.

outside the limited context of the First Amendment").[3] This court recently reaffirmed this view in *City Recycling, Inc.* v. *State*, 247 Conn. 751, 725 A.2d 937 (1999), in which this court stated: "It is a settled rule of constitutional adjudication that a court will decide the constitutionality of a statute *only as it applies* to the particular facts at hand." (Emphasis added.) Id., 758. Accordingly, for the reasons provided in parts I, II and III of this opinion, I would decline to consider the plaintiffs' *facial*[4] constitutional challenges predicated upon article first, §§ 1 and 20 (equality of rights and equal protection), article first, § 7 (search and seizure), article first, § 9 (freedom from unwarranted arrest), and article first,

[3] The scope of our overbreadth doctrine does not extend to all manners of expressive activity. For example, our overbreadth doctrine does not apply to commercial speech. See *State* v. *Leary*, 217 Conn. 404, 418, 587 A.2d 85 (1991).

In addition, this court has expressed an unwillingness to consider facial vagueness challenges outside of those challenges that involve first amendment rights. See *State* v. *Wilchinski*, 242 Conn. 211, 217, 700 A.2d 1 (1997) (this court has "never engaged in a facial vagueness analysis outside the context of the first amendment").

[4] The plaintiffs have not raised, nor do I consider, an "as applied" challenge to the ordinance. Nonetheless, at oral argument, the plaintiffs and the town engaged in a vigorous debate as to the facts that could be relied upon in answering the certified questions. Although this debate would be relevant were I considering an *as applied* challenge to the ordinance, the existence or nonexistence of a factual record does not affect my analysis inasmuch as the plaintiffs' facial challenge in this case does not require any specific application of the ordinance. See *State* v. *Linares*, supra, 232 Conn. 363 n.14 ("We agree . . . that the nature of [the litigant's] as applied constitutional claims required the Appellate Court to conduct an independent review of the record. . . . Of course, such independent review was unnecessary for the Appellate Court's consideration of the [litigant's] facial vagueness and overbreadth claims because an analysis of a facial type of claim is not dependent on the facts of a particular case." [Citations omitted; internal quotation marks omitted.]); see also *37712, Inc.* v. *Ohio Dept. of Liquor Control*, 113 F.3d 614, 618 n.7 (6th Cir. 1997) ("[n]o essential issues of material fact are presented for resolution upon a facial challenge to a statute or ordinance"). Nonetheless, although the nonexistence of a factual record is not fatal to a facial challenge, the perilous endeavor of forging constitutional doctrine in a factual vacuum should cause us to consider facial challenges only in exceptional circumstances.

§ 10 (right of redress), of our state constitution because I conclude that these "issues . . . can be addressed only in light of the facts of record." Id., 759.

I

I begin with general principles of constitutional adjudication relevant to certified questions two through five. As this court recently observed in *City Recycling, Inc.*, "the reserved[5] questions as phrased require us to pro-

[5] *City Recycling, Inc.* came to this court upon reservation from the trial court. *City Recycling, Inc.* v. *State*, supra, 247 Conn. 752; see General Statutes § 52-235; Practice Book § 73-1.

General Statutes § 52-235 provides: "(a) The Superior Court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the Supreme Court or Appellate Court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein.

"(b) The court or judge making the reservation shall, in the judgment, decree or decision made or rendered in such cases, conform to the advice of the Supreme Court or the Appellate Court."

Practice Book § 73-1 provides: "(a) Any reservation shall be taken to the supreme court or to the appellate court from those cases in which an appeal could have been taken directly to the supreme court, or to the appellate court, respectively, had judgment been rendered. Reservations in cases where the proper court for the appeal cannot be determined prior to judgment shall be taken directly to the supreme court.

"(b) All questions presented for advice shall be specific and shall be phrased so as to require a Yes or No answer.

"(c) Before any question shall be reserved by any court, counsel shall file in that court a stipulation which shall clearly and fully state the question or questions upon which advice is desired; that their present determination by the appellate court having jurisdiction would be in the interest of simplicity, directness and economy in judicial action, the grounds for such allegation being particularly stated; that the answers to the questions will determine, or are reasonably certain to enter into the final determination of the case; and that the parties request that the questions be reserved for the advice of the appellate court having jurisdiction. The stipulation shall also designate the specific pleadings in the trial court case file which are necessary for the presentation of the question or questions sought to be reserved and shall state the undisputed facts which are essential for determination of the question or questions sought to be reserved. With the stipulation the parties shall file a joint docketing statement in the format specified in Section 63-4 (a) (4) for regular appeals.

"(d) Upon the ordering of a reservation by the superior court, the clerk of the trial court shall send notice of the reservation to the appellate clerk

nounce upon the facial validity of [the statute]. . . . A party who challenges the constitutionality of a statute must prove that the statute has adversely affected a protected interest under the facts of his [or her] particular case and not merely under some possible or hypothetical set of facts not proven to exist. . . .

"This principle reflects the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of legislative enactments. . . . The effect of an answer in the affirmative to any one of the reserved questions would be to declare [the statute] unconstitutional in its entirety. . . . We are bound never to anticipate a question of constitutional law in advance of the necessity of deciding it [and] never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.[6] . . . A judicial holding

and to all parties of record. The date of issuance of this notice shall be deemed the filing date of the appeal for purposes of the brief filing deadlines of Section 67-3. No entry fee shall be paid to the superior court and no costs shall be taxed in favor of any party. With the notice of reservation, the clerk of the trial court shall send to the appellate clerk two copies each of the stipulation, its accompanying joint docketing statement, the superior court's order of reservation, and the docket sheet (DS1) listing the counsel for all parties.

"(e) The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action.

"(f) The advice of the appellate court on a reservation may be reviewed by the supreme court only upon the granting of certification as provided in chapter 84."

[6] Justice Antonin Scalia of the United States Supreme Court recently has advocated a similar position with respect to facial federal constitutional challenges: "When a facial challenge is successful, the law in question is declared to be unenforceable in all its applications, and not just in its particular application to the party in suit. To tell the truth, it is highly questionable whether federal courts have any business making such a declaration. The rationale for our power to review federal legislation for constitutionality, expressed in *Marbury* v. *Madison*, [5 U.S. (1 Cranch)] 137 (1803), was that we had to do so in order to decide the case before us. But that

that a legislative Act is unconstitutional is one of very grave concern. We ought not, and will not, declare a statute to be unconstitutional unless our judgment is formed in the light of this rule of our law: It is our duty to approach the question with caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond a reasonable doubt. . . .

"These principles of constitutional jurisprudence are no less pertinent . . . merely because the issues have been presented by way of reservation.[7] This court declared long ago that our reservation procedures do not contemplate, and ought not to be construed to permit, that every question which a trial court may encounter . . . might be brought here at once upon its being either met or scented from afar . . . . We recognized that such a practice might inevitably result in this court being called upon to formulate principles of law which would never enter into the determination of a cause, to formulate such principles in an abstract form suited to more or less general application and not as related to a concrete state of facts and narrowed and simplified by such relation, to create a mass of dicta embodying statements of abstract general principles which might

rationale only extends so far as to require us to determine that the statute is unconstitutional as applied to [the] party, in the circumstances of [the] case." *Chicago* v. *Morales*, 527 U.S. 41, 74, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (Scalia, J., dissenting).

[7] In this case, the relevant questions of constitutional law come to this court pursuant to the certification procedures outlined in Public Acts 1999, No. 99-107. Reservation and certification are similar in that certification provides this court with an opportunity to decide a "question of law certified . . . by a court of the United States"; Public Acts 1999, No. 99-107, § 4; and reservation procedures allow "[t]he Superior Court . . . [to] reserve questions of law for the advice of the Supreme Court . . . ." General Statutes § 52-235 (a). Thus, the rationale outlined in this passage from *City Recycling, Inc.*, describing our unwillingness to entertain facial challenges in the reservation context, is equally applicable to certified questions brought before this court pursuant to Public Acts 1999, No. 99-107.

some day rise up to harass judicial action, and to unnecessarily multiply the number of appearances in this court which an action might have before final disposition was made of it." (Internal quotation marks omitted.) Id., 758–59.

This court's hesitancy to pass upon facial constitutional claims outside of the areas of overbreadth and vagueness, discussed in parts II and VII of the majority opinion, respectively, is long-standing in our jurisprudence. See, e.g., id., 759 ("the issues of due process and equal protection of the law [under our state constitution] can be addressed only in light of the facts of record"); *Shawmut Bank, N.A.* v. *Valley Farms,* supra, 222 Conn. 368 (declining to consider facial challenge under due process clause of federal constitution because "[t]he fact that the [Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid" [internal quotation marks omitted]); *State* v. *Floyd,* 217 Conn. 73, 88, 584 A.2d 1157 (1991) ("[T]he present record is inadequate to establish a factual basis for the defendants' asserted liberty interests, for essentially the same reasons that it is inadequate to support their claims under the fourth amendment. Decisions construing substantive liberty interests protected by the due process clause emphasize the fact-bound and relative nature both of the interests protected and of the procedural protections required by the constitution."); *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 527, 461 A.2d 938 (1983) ("[This] case [involves] a facial attack [premised on the separation of powers doctrine of the state constitution] on the constitutionality of a statute which has a sphere of operation that need never intrude upon the exclusive province of the judiciary to control the conduct of attorneys as officers of the court. We cannot, of course, exclude the possibility that, at some time in the future,

a more difficult confrontation will have to be resolved. Judicial restraint counsels us to await that event."); *Weil* v. *Miller*, 185 Conn. 495, 501, 441 A.2d 142 (1981) (rejecting facial procedural due process claim under state and federal constitutions because "[a]ccording to well-established principles, a plaintiff who challenges the constitutionality of a statute must prove that the statute has adversely affected a constitutionally protected right under the facts of his [or her] particular case and not merely under some possible or hypothetical set of facts not proven to exist" [internal quotation marks omitted]); *Kellems* v. *Brown*, 163 Conn. 478, 483, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973) (declining to consider "questions reserved [that address challenges under the equal protection and due process clauses of the state constitution and that] are not limited to the situation of the particular plaintiffs" and noting that "answers [supplied in the opinion] are applicable only within the limited context of the specific facts covered by the stipulation agreed on by the parties to [the] action").

## II

With these principles in mind, I turn to the specific certified questions. Certified questions four and five invite this court to determine whether the ordinance facially violates the equal protection rights of minors and the due process rights of the parents, respectively.[8] I first discuss Richard Ramos' equal protection claim. Our case law dealing with equal protection claims has reflected the importance that this court attaches to crafting constitutional doctrine only in cases in which

[8] I discuss both of these claims in part II of this opinion because, although, on the merits, such claims are distinct, the rationale for refusing to consider facial claims brought under both provisions is similar and the two have been discussed together in our case law. See *City Recycling, Inc.* v. *State*, supra, 247 Conn. 758–60.

an adequate factual record[9] is presented. See, e.g., *City Recycling, Inc.* v. *State,* supra, 247 Conn. 759 ("the issues of due process and *equal protection of the law* [under our state constitution] can be addressed only in light of the facts of record" [emphasis added]); *Dubay* v. *Irish,* 207 Conn. 518, 528, 542 A.2d 711 (1988) (when plaintiff claims parental immunity doctrine violates equal protection clause of state constitution "plaintiff bears the heavy burden of demonstrating that, *under the particular facts of [the] case,* the parental immunity doctrine violates . . . constitutional rights" [emphasis added]); see also *Barton* v. *Ducci Electrical Contractors, Inc.,* 248 Conn. 793, 800, 730 A.2d 1149 (1999); *Bruno* v. *Civil Service Commission,* 192 Conn. 335, 339, 472 A.2d 328 (1984).[10]

For example, in *Barton* v. *Ducci Electrical Contractors, Inc.,* supra, 248 Conn. 793, this court stated: "Before proceeding, we note that the reserved questions [which deal with claims under the equal protection clauses of the state and federal constitutions] are too broad for us to answer as framed. In evaluating the constitutionality of statutes, we are mindful of the principle that [a] party mounting a constitutional challenge

[9] Richard Ramos cites to various alleged applications of the ordinance in the "Plaintiffs' *Proposed* Findings of Fact and Conclusions of Law"; (emphasis added); in support of his claim of an equal protection violation. Even if it is assumed—and I do not assume—that such facts are undisputed, evidence relating to the application of the ordinance is irrelevant to our consideration of Richard Ramos' facial challenge. See footnote 4 of this opinion.

[10] I recognize that we have not uniformly refused to consider facial equal protection challenges under the state constitution. Compare *State* v. *Angel C.,* 245 Conn. 93, 125, 715 A.2d 652 (1998) ("[t]o implicate the equal protection clauses under the state and federal constitutions . . . it is necessary that the state statute in question, either *on its face* or in practice, treat persons standing in the same relation to it differently" [emphasis altered; internal quotation marks omitted]) with *City Recycling, Inc.* v. *State,* supra, 247 Conn. 758 ("the issues of due process and *equal protection of the law* [under our state constitution] can be addressed only in light of the facts of record" [emphasis added]).

to the validity of a statute must provide an adequate factual record in order to meet its burden of demonstrating the statute's adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothetical set of facts as yet unproven." (Internal quotation marks omitted.) Id., 800.[11]

Similarly, in *Bruno* v. *Civil Service Commission*, supra, 192 Conn. 335, a case involving an equal protection challenge under the federal constitution to a residency requirement for employment, this court stated: "[In *Bruno* v. *Civil Service Commission*, 184 Conn. 246, 440 A.2d 155 (1981)] [w]e opined that the record was not adequate for this court to determine the durational residency rule's constitutionality and that a determination as to its constitutionality must await the development, at the trial level, of a sufficiently complete record: '[T]he . . . record [in the case] is deficient because it contains no evidence or factual determinations concerning the governmental interests advanced by the rule, the degree to which the means employed by the rule are tailored to achieve its legislative objectives, or the extent to which various rights of the plaintiff are affected by the rule.' . . . [Id., 251]." *Bruno* v. *Civil Service Commission*, supra, 339.[12] Therefore, I would conclude that the issue of *"equal protection of the law* can be addressed only in light of the facts of

---

[11] Although, in *Barton*, we went on to remedy the overbroad nature of a particular reserved question by modifying it to apply to the plaintiffs' particular *factual* claim; see *Barton* v. *Ducci Electrical Contractors, Inc.*, supra, 248 Conn. 801–802; in the present case, no such modification is possible in light of the *facial* nature of Richard Ramos' claim.

[12] Similarly, although Richard Ramos cites to *Sheff* v. *O'Neill*, 238 Conn. 1, 678 A.2d 1267 (1996), *Daly* v. *Delponte*, 225 Conn. 499, 624 A.2d 876 (1993), and *Gaines* v. *Manson*, 194 Conn. 50, 481 A.2d 1084 (1984), in support of his equal protection claim, in each of these cases, this court had an adequate factual record upon which to base its decision. See *Sheff* v. *O'Neill*, supra, 7–11; *Daly* v. *Delponte*, supra, 501–505; *Gaines* v. *Manson*, supra, 512–14.

record." (Emphasis added.) *City Recycling, Inc.* v. *State*, supra, 247 Conn. 759. Accordingly, with respect to certified question number four, I would decline to consider Richard Ramos' facial claim premised upon article first, §§ 1 and 20, of the Connecticut constitution.

I next discuss Janet Ramos' facial due process claim. In none of the cases cited by Janet Ramos in support of her due process claim did this court consider a facial challenge[13] under the due process clause of our state constitution. See generally *Ascuitto* v. *Farricielli*, 244 Conn. 692, 711 A.2d 708 (1998); *Castagno* v. *Wholean*, 239 Conn. 336, 684 A.2d 1181 (1996); *Dubay* v. *Irish*, supra, 207 Conn. 518; *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 420 A.2d 875 (1979). On the contrary, as with this court's equal protection jurisprudence, the case law dealing with claims under the due process clause of the state constitution has manifested this court's belief in the benefit of developing constitutional doctrine only in cases in which an adequate factual record exists. See, e.g., *City Recycling, Inc.* v. *State*, supra, 247 Conn. 759; *State* v. *Floyd*, supra, 217 Conn. 88; *Weil* v. *Miller*, supra, 185 Conn. 501; *Kellems* v. *Brown*, supra, 163 Conn. 483.

The plaintiffs also cite to a number of decisions that have addressed whether a particular curfew ordinance violates the equal protection and due process clauses of the *federal* constitution. See *Hutchins* v. *District of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999); *Schleifer ex rel. Schleifer* v. *Charlottesville*, 159 F.3d 843, 846–47 (4th Cir. 1998), cert. denied, 526 U.S. 1018, 119 S. Ct. 1252, 143 L. Ed. 2d 349 (1999); *Nunez* v. *San Diego*, 114 F.3d 935, 944, 951 (9th Cir. 1997); *Qutb* v. *Strauss*, 11 F.3d 488, 492 (5th Cir. 1993), cert. denied sub nom.

---

[13] Janet Ramos' citation to her own testimony and that of other parents who testified in the District Court regarding the impact of the ordinance is irrelevant to our consideration of her facial claim. See footnote 4 of this opinion.

*Qutb* v. *Bartlett*, 511 U.S. 1127, 114 S. Ct. 2134, 128 L. Ed. 2d 864 (1994); *Waters* v. *Barry*, 711 F. Sup. 1125, 1138 (D.D.C. 1989); *McCollester* v. *Keene*, 586 F. Sup. 1381, 1386 (D.N.H. 1984).[14] In the present case, however, only *state* constitutional issues are before the court.[15] Therefore, I would conclude that, with respect to certi-

[14] Although Richard Ramos cites to *Johnson* v. *Opelousas*, 658 F.2d 1065 (5th Cir. 1981), in support of his equal protection claim, that case is inapposite because the court in *Johnson* expressly limited its holding to the plaintiff's overbreadth claim; id., 1074; and did not consider the plaintiff's equal protection claim. See id.

[15] I recognize that courts have considered facial claims premised upon the due process and equal protection clauses of the *federal* constitution. See, e.g., *Vacco* v. *Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293, 138 L. Ed. 2d 834 (1997) (considering facial challenge to law prohibiting assisted suicide premised upon fourteenth amendment equal protection clause); *Reno* v. *Flores*, 507 U.S. 292, 299–300, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993) (considering facial challenge to Immigration and Naturalization Service regulation based on alleged violation of substantive and procedural due process). A plaintiff asserting a facial claim generally must "establish that no set of circumstances exists under which the [statute] would be valid." *United States* v. *Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). "This rule, known as the *Salerno* rule, has been subject to a heated debate in the [United States] Supreme Court, where it has not been consistently followed." (Internal quotation marks omitted.) *United States* v. *Frandsen*, 212 F.3d 1231, 1235 n.3 (11th Cir. 2000) (discussing application of *Salerno* rule in federal constitutional adjudication).

The United States Supreme Court's reluctance to consider a facial challenge predicated on the due process clause of the federal constitution recently was demonstrated in *Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), which affirmed *In re Custody of Smith*, 137 Wash. 2d 1, 969 P.2d 21 (1998), a case to which the plaintiffs cite in their brief. In *In re Custody of Smith*, the Washington Supreme Court declared a third party visitation statute *facially* unconstitutional under the federal due process clause. See *In re Custody of Smith*, supra, 21. Rather than affirm the reasoning of the Washington Supreme Court, the United States Supreme Court, in a plurality opinion, held that the Washington visitation statute violated the due process clause of the fourteenth amendment only *as applied*. See *Troxel* v. *Granville*, supra, 67 (plurality opinion) ("[the statute] *as applied* to [the parent] and her family in this case, unconstitutionally infringes on [a] fundamental parental right" [emphasis added]). The plurality reasoned that, "[b]ecause much state-court adjudication in this context occurs on a case-by-case basis, [it] would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* [i.e., facial] matter." (Emphasis in original.) Id., 73 (plurality opinion).

fied question number five, our conclusion in *City Recycling, Inc.* that "the [issue] of *due process* . . . can be addressed only in light of the facts of record"; (emphasis added) *City Recycling, Inc.* v. *State*, supra, 247 Conn. 759; governs. Accordingly, I would decline to consider Janet Ramos' facial claim premised upon article first, § 10, of the Connecticut constitution.

### III

Certified questions two and three invite this court to determine whether the ordinance facially violates the rights of minors to be free from: (1) unreasonable searches and seizures as secured by article first, § 7, of the Connecticut constitution; and (2) unwarranted arrest, detention or punishment as secured by article first, § 9, of the Connecticut constitution.[16] In *all* of the cases cited in support of Richard Ramos' claims under article first, §§ 7 and 9, this court had a factual record upon which to determine the reach of the constitutional provision at issue. See *State* v. *Donahue*, 251 Conn. 636, 639–40, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000); *State* v. *White*, 229 Conn. 125, 147–48, 640 A.2d 572 (1994); *State* v. *Oquendo*, 223 Conn. 635, 640–42, 613 A.2d 1300 (1992); *State* v. *Geisler*, 222 Conn. 672, 677–79, 695, 610 A.2d 1225 (1992); *State* v. *Lamme*, 216 Conn. 172, 175–76, 579 A.2d 484 (1990); *State* v. *Marsala*, 216 Conn. 150, 152, 579 A.2d 58 (1990); *State* v. *Dukes*, 209 Conn. 98, 100–103, 123–25, 547 A.2d 10 (1988); *State* v. *Morrill*, 205 Conn. 560, 562–64, 534 A.2d 1165 (1987); *State* v.

---

[16] I discuss both of these claims in part III of this opinion because, although, on the merits, such claims are distinct; compare *State* v. *Lamme*, 216 Conn. 172, 177, 579 A.2d 484 (1990) ("we have generally characterized article first, § 9, as one of our state constitutional provisions guaranteeing due process of law") with id., 177 n.6 ("[b]y contrast, article first, § 7, of the Connecticut constitution provides constitutional protection from unwarranted searches and seizures"); the rationale for refusing to consider facial claims brought under both provisions, namely, the highly fact driven constitutional doctrine common to both provisions, is similar.

*Scully*, 195 Conn. 668, 669–72, 675–76, 490 A.2d 984 (1985); *Cinque* v. *Boyd*, 99 Conn. 70, 71–73, 94, 121 A. 678 (1923).[17] In contrast, this court demonstrated its reluctance to facially invalidate a statute pursuant to a search and seizure claim in *State* v. *Floyd*, supra, 217 Conn. 73. In *Floyd*, we reversed a trial court's decision that a statute violated the fourth amendment's prohibition against unreasonable searches and seizures because "[t]he balancing of societal interests against personal interests required to analyze the reasonableness of an action under the fourth amendment demands that the court consider all the relevant facts. Absent such a consideration, the court's invalidation of the statute as applied is in effect an invalidation of the statute on its face, and its judgment cannot be sustained." (Internal quotation marks omitted.) Id., 85.

The foregoing case law reflects the highly fact dependent nature of constitutional jurisprudence under both article first, § 7; id., 83 (search and seizure "jurisprudence is pervasively fact-bound, whether the issue is the scope of the amendment itself . . . the definition of a seizure . . . or the appraisal of the reasonableness of a particular governmental intrusion" [citations omitted; internal quotation marks omitted]); and article first, § 9; see, e.g., *State* v. *White*, supra, 229 Conn. 152–53 (reviewing our fact laden jurisprudence under article first, § 9, of Connecticut constitution).[18] Answering certified questions two and three would require this court

---

[17] Although Richard Ramos cites to *State* v. *Stoddard*, 206 Conn. 157, 164–67, 537 A.2d 446 (1988), in support of his claim under article first, § 7, of the Connecticut constitution, *Stoddard* involved a claim under article first, § 8, of the Connecticut constitution and, therefore, is inapposite.

[18] I recognize that we have considered facial claims under article first, § 9, of the Connecticut constitution under exceptional circumstances. E.g., *State* v. *Ross*, 230 Conn. 183, 248–49, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995) (considering facial challenge under article first, § 9, of Connecticut constitution to statute authorizing imposition of death penalty).

to shape its constitutional doctrine in an area governed by such fact dependent doctrines as the "totality of the circumstances"; *State* v. *Cobb*, 251 Conn. 285, 317, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000); in the absence of any such circumstances upon which to base its judgment. Therefore, I would conclude that the rationale for refusing to consider facial challenges under the state constitution discussed in parts I and II of this opinion; see, e.g., *City Recycling, Inc.* v. *State*, supra, 247 Conn. 758–59; is equally applicable to Richard Ramos' claims premised upon the search and seizure and unwarranted arrest provisions of the state constitution. Accordingly, I would decline to consider certified questions two and three.[19]

Accordingly, I concur with parts I, II and VII of the majority opinion and concur only in the result with respect to parts III, IV, V and VI of the majority opinion.

---

[19] I acknowledge that federal courts have considered facial challenges premised upon the fourth amendment right to be free from unreasonable searches and seizures. See, e.g., *Skinner* v. *Railway Labor Executives' Assn.*, 489 U.S. 602, 614, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) (considering facial challenge to government mandated drug testing program).